# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FRANK T. BRZOZOWSKI, Plaintiff**

v.

**PENNSYLVANIA TURNPIKE COMMISSION**
and THOMAS W. CORBETT, in his official
capacity as Governor of Pennsylvania, and his
successors in office; PENNSYLVANIA TURNPIKE
COMMISSIONERS, individually and as agents and
employers of the PTC: WILLIAM K. LIEBERMAN,
Chairman; A. MICHAEL PRATT, Esquire, Vice Chairman;
PASQUALE T. DEON, Sr., Secretary Treasurer;
SEAN LOGAN, Commissioner; BARRY J. SCHOCH,
P. E., Secretary of Transportation; PATRICIA
SCHLEGEL, individually and as agent and employee;
JUDY TREASTER, individually and as agent and
employee; DOROTHY ROSS, individually and
as agent and employee; PATRICK CARO, individually
and as agent and employee; JILL DAVIS, individually
and as agent and employee; DAVID SMITH, individually
and as agent and employee; LYNN FEEMAN, individually
and as agent and employee; and "TROOP T" OF THE
PENNSYLANIA STATE POLICE and CPL. SHAWN
KERNAGHAN, Bowmansville PSP Office, (Lancaster
County) individually and as agent and employee.

Defendants.

**SECOND AMENDED COMPLAINT FOR
EMPLOYMENT DISCRIMINATION,
CIVIL RIGHTS, TORTS,
MISREPRESENTATION,
CONVERSION OF PROPERTY, CIVIL
CONSPIRACY TO DEFRAUD EMPLOY-
MENT, DECLARATORY AND
INJUNCTIVE RELIEF etc.**

CIVIL ACTION NO.15-CV-2339-MAK

**FILED**

JAN 04 2019

KATE BARKMAN, Clerk
By_____Dep. Clerk

JURY TRIAL DEMANDED

Pursuant to Fed. R.C.P. Rule 15(c)(1)(A)(B) Appellant, Frank T. Brzozowski (FTB),
incorporates by reference previous filings, as if set forth at length, the Complaint filed April 27,
2015; Amended Complaint filed March 30, 2016, USDC motions and responses, documents in
USCA No 16-1697, and USCA. No. 16-3607, Informal Reply Brief, the Supplemental Informal
Brief, and Exhibits, the documents in the Deferred Appendix (Apx. 1-901) plus the incorporated
pro-se form from the USDC Clerk (Apx. 246-47).

## SECOND AMENDED COMPLAINT

1.      Invoking Fed. R.C.P Rule 8(c), Plaintiff, Frank T. Brzozowski, pro-se, a single, gray haired, heavy-set Caucasian male, at the times of the causes of action was 58 years old, a reelected Vice Chairman of the 31st Ward Executive Committee and Democratic State Committee, a former shop steward and long term dues paying and political action committee (PAC) donor to the International Brotherhood of Teamsters, Union Local 77, who worked for the Pennsylvania Turnpike Commission (PTC), a transportation agency, for 10 years; Plaintiff was fired by Human Resources in 2013 as an executive assistant to the Director of the Office of Diversity and Inclusion (ODI), a multicultural department intended to investigate discrimination and civil rights complaints, including but not limited to racial stereotyping, sexual harassment, disability accommodations, concerns affecting minority and women employment rights, issues affecting veterans, prevailing wages, bid recommendations, Pa UCP certifications of contractors, and addressing employment matters with transportation agencies, who claims of the Pennsylvania Turnpike Commission, etal, defendants, a sum in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in damages, upon mixed motive civil rights, torts and equitable causes of action hereof, the following is a statement:

2.      As Plaintiff proceeds Pro-se, pursuant to the Order and Memorandum by Judge Mark A. Kearney dated November 29, 2018

 the Court construes his allegations liberally, <u>Higgs v. Att'y Gen.</u>, 655 F.3d 333 (2011); <u>Estelle v. Gamble,</u>  429 U.S. 97 (1976); <u>Haines v. Kerner,</u> 404 U.S. 519 (1972) are invoked.

## I.      PARTIES TO THIS COMPLAINT

A.      PLAINTIFF

3.      <u>FRANK T. BRZOZOWSKI,</u> pro-se, Plaintiff in the above-captioned case, is an adult resident of Philadelphia, in the Eastern District of Pennsylvania.


B.      DEFENDANTS

4.      Defendant <u>PENNSYLVANIA TURNPIKE COMMISSION </u>(hereinafter, the "PTC" or the "Commission") is an independent agency created pursuant to 36 P.S. §651.1 et seq., to construct, finance, operate, and maintain the Pennsylvania Turnpike, the Northeast Extension 1-476, the James E. Ross Highway (named after the father of Defendant Dorothy Ross), Amos K. Hutchinson Bypass, Mon/Fayette Expressway and Pittsburgh's Southern Beltway; Defendant PTC, with a principal place of business at the Central Administration Building (CAB), 700 S. Eisenhower Boulevard, Middletown, PA 17057, in the above-captioned matter, in the Eastern District of Pennsylvania owns numerous maintenance sheds, business interchange offices, the Eastern Regional Office in King of Prussia, wetlands and many parcels of real property.

5.      At all times relevant to this action, the defendants dismissed without prejudice and the Pennsylvania Turnpike Commission were acting pursuant to the authority granted to it pursuant to state statute and acting under color of state law.

6.      The defendants dismissed without prejudice are:

a)      Defendant <u>PENNSYLVANIA TURNPIKE COMMISSION</u> (hereinafter, the "PTC" or the "Commission") is an independent agency created pursuant to 36 P.S. §651.1 et seq., to construct, finance, operate, and maintain the Pennsylvania Turnpike, the Northeast Extension 1-476, the James E. Ross Highway (named after the father of Defendant Dorothy Ross), Amos K. Hutchinson Bypass, Mon/Fayette Expressway and Pittsburgh's Southern Beltway; Defendant PTC, with a principal place of business at the Central Administration Building (CAB), 700 S. Eisenhower Boulevard, Middletown, PA 17057, in the above-captioned matter, in the Eastern District of Pennsylvania owns numerous maintenance sheds, business interchange offices, the Eastern Regional Office in King of Prussia, wetlands and many parcels of real property.

b)   Defendant <u>Dorothy Ross</u>, is sued individually, and as agent and employee;

c)   Defendant <u>Patricia Schlegel,</u> is sued individually, and as agent and employee;

d)   Defendant, <u>THOMAS W. CORBETT</u> is sued individually, and in his official capacity as (former) Governor of Pennsylvania, and his successors in office; Governor Corbett nominated majority  Commissioners Schoch, Deon and Logan, and was a sponsor of PTC personnel in the above-captioned matter with a principle place of business at the Capitol Building, Harrisburg, PA 17120.

e)   Defendant <u>PENNSYLANIA STATE POLICE (PSP) "TROOP T"</u> has the Highspire Office in the bottom floor of the PTC Central Administration Building, 700 Eisenhower Boulevard, Middletown, PA 17057; a commanding officer of PSP Highspire Office supervises the state troopers and motor vehicle feet at nine (9) Pennsylvania State Barracks throughout the 552 miles of turnpike highway between Ohio and New Jersey with three 3rd District facilities: Pocono Office in Carbon County, King of Prussia Office in Montgomery County and Bowmansville Office in Lancaster County in the Eastern District of Pennsylvania;

f)   Defendant PSP <u>CPL SHAWN P. KERNAGHAN</u> is sued individually, and as agent and employee, who was paid from the fares collected by the Pennsylvania Turnpike Commission, and not from funds of the PA Treasury, for being employed as a state trooper at the times of the causes of action was assigned to Bowmansville PSP Barracks, 443 Panorama Drive, Denver, PA 17517 in Lancaster County in the Eastern District of Pennsylvania.

7.      Defendant Pennsylvania Turnpike Commission pays for the services of Defendant Pennsylvania State Police Troop-T from the revenue it generates from tolls and bonds, 36 P.S.

652d; state policemen assigned to duty with the Pennsylvania Turnpike Commission are not funded by the Pennsylvania Treasury and the Officers shall not be counted in determining the total number of officers and men in the State Police 71 P.S. 65.

8.      The Commission's projected expense for the Pennsylvania State Police (PSP Troop-T) is estimated to increase 8.9% ($4.0 million); PTC Act 44 commitments to the Commonwealth through the issuance of Subordinate Revenue Bonds and Subordinate Special Revenue Bonds, is currently totaling over $5.8 billion. PTC Fiscal 2018 Act 44 Financial Plan (June 1, 2017).

9.      PTC budget has the Commonwealth does not fund the PTC; moreover, adhering to ACT 44, PTC submits $450 million annually to the state; PSP Troop-T is not financed by the PA Treasury, the PTC finances PSP Troop-T according to PTC Fiscal 2018 Act 44 Financial Plan (June 1, 2017).

10.     When discrepancies are revealed afterwards, Plaintiff reserves the right to duly raise causes of action against original defendants, now dismissed with prejudice, when uncovered in discovery.


C.      PLACE, LOCATIONS OF EMPLOYMENT

11.      Most of the PTC vehicle traffic, and revenue obtained through tolls, occurs in the Eastern District of Pennsylvania.

12.      The locations where Plaintiff was employed by Defendant PTC for ten years and performed duties are: Central Administration Building and TIP Building (Dauphin County), Eastern Regional Office (Montgomery County), Downingtown Interchange (Chester County), Morgantown Interchange (Berks County), Philadelphia-Bensalem Interchange (Bucks County), Delaware River Bridge Interchange (Bucks County), Delaware Valley Interchange (Bucks County), Willow Grove Interchange (Montgomery County), Fort Washington Interchange (Montgomery County), Valley Forge Interchange (Montgomery County), Norristown Interchange (Montgomery County) and Mid-County Interchange (Montgomery County), predominately in the Eastern District of Pennsylvania.

13.      Around 2012 the PTC employed approximately 2,137 employees; at all relevant times mentioned herein, Defendant, Pennsylvania Turnpike Commission has continuously been an employer engaged in an industry affecting commerce doing business across the Commonwealth of Pennsylvania and has continuously had more than 15 employees for the purposes of §701(b), (g) and (h) of Title VII of the Civil Rights Act 42 U.S.C. SS 2000e (b), (g) and (h).

14.      Plaintiff contends that Defendant Pennsylvania Turnpike Commission is not an arm of the state and therefore waives and is not protected from suit by Eleventh Amendment immunity by accepting federal funds; it is separate and apart from the Commonwealth, and the Commission could sue and be sued in its own name and enter into contracts in its own name with the power to

fix and revise tolls, issue bonds and notes, purchase and own property, and promulgate rules and regulations for its own governance 36 P.S. 652d.

15.    Commissioner Deon, a major Republican powerbroker and fundraiser, oversaw, supervised and helped financed the construction with federal funds the new PTC I-95 interchange near his home in Bucks County, and he is the Chairman of SEPTA, a member of the Pennsylvania Unified Certification Program (Pa UCP), who certifies contractors of the Disadvantaged Business Enterprises (DBEs) that receive PTC contracts and bids reviewed by the PTC Office of Diversity and Inclusion.

## II.    BASIS FOR JURISDICTION

16.    This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action includes the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") which provides for original jurisdiction of Plaintiffs claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under appropriate governing statute.

17.    Defendant PTC is the "employer" within the meaning of FLSA, 29 U.S.C. § 203(d), an "enterprise" within the meaning of FLSA, 29 U.S.C. S 203(r), and "engaged in commerce" within the meaning of FLSA, 29 U.S.C. S 203(s)(1) and S 203( x) "public agency."

18.    Defendant PTC is an "employer" for the purposes of § 701 (b), (g) and (h) of Title VII of the Civil Rights Act, 42 U.S.C. S 2000e (b), (g) and (h) because it is engaged in an industry affecting interstate commerce and because it maintains fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current  or proceeding calendar year, and THE EQUAL PAY ACT of 1963 § 1620.2 (a) Genera' coverage of employees "engaged in commerce."

19.    The Court is permitted to hear Plaintiffs claims brought pursuant to the Pennsylvania Constitution in accordance with its supplemental jurisdiction over state claims as set forth in the provisions of 28 U.S.C. §1367(a) and Rule 18(a).

20.    Pursuant to 28 U.S.C. S 1391(b)(1) of the A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; Defendant PTC Commissioner Pasquale T Deon resides at 1655 Carlene Court, Langhorne, PA 19047, Bucks County in the Eastern District of Pennsylvania; substitute defendant, Secretary of Transportation, PTC Commissioner Leslie S. Richards lives in Montgomery County.

21.    The second amended complaint refers to the original USDC commencement on April 27, 2015, has several causes of action arising under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 and the Pennsylvania Constitution, regarding Plaintiffs rights to exercise an enjoy free speech and the freedom of association guaranteed under the First Amendment and Fourteenth

Amendment of the United States Constitution and the Pennsylvania Constitution, Article I, Section 7.

22.     This USDC action commenced **April 27, 2015**, pursuant to a 90-day EEOC letter for various causes of action including torts, discrimination in employment, acts of continuing violations of civil rights and pursuant to but not limited to the following which could clarified by discovery:

a)   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to a2000e-17 (race, color, gender, national origin). In compliance within federal district court under Title VII, attached is a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission dated Friday, **January 23, 2015**.

b)   Age Discrimination in Employment Act of 1967. as codified, 29 U.S.C. §§   621-634 and it has subject matter jurisdiction under 28 U.S.C. §§ 1331 , 1337. Venue is proper under 28 U.S.C. § 1391 (b) (2) and Lilly Ledbetter  Fair Pay Act of 2009 for back pay, charges were timely filed with the EEOC, Charge No. 530-22014-01936.

c)   Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat.  §§ 951-963 for discrimination due to race, color, family status, religious creed, ancestry, age, sex, and national origin.

d)   The U. S. Constitution, including but not limited to the First Amendment, 4[tl] Amendment, 5th Amendment, 6[m] Amendment, and 14th Amendment.

e)   Contravention of federal and state laws including 28 U.S.C. §§ 1291, 1292, 1343; 42 U.S.C. §§ 1981, 1981a(a)(1), 1983, 1985, 1986, 2000e-7, 2000e-16a to 2000e-16c, and 2000d claim; the Whistle Blower statute 42 US.C. §14141; and invoking Fed. R. Civ. P. S 6(e) and Fed. R. Civ, P. S 24(a).

f)   The Federal Fair Labor Standards Act, 29 U.S.C. S 201 et seq. ("FLSA"), Lilly Ledbetter Fair Pay Act of 2009 - Amends the Civil Rights Act of 1964, and the Equal Pay Act, et seq. § 1620.2, S 1620.14, § 1620.27, S 1620.33, and § 1620.34; "Equal Pay Act (EPA): EPA suits must be filed in federal or state court within years (3 years for willful violations) of the alleged EPA underpayment.

g)   **Contravention of common law torts and invoking and applying the continuing tort and continuing violation rule, and the "discovery rule" after termination.**

h)   Remedy seeking Declaratory and Injunctive Relief. 28 U.S. Code S 1343(4), 42 U.S. Code § 2000a—3 - Civil actions for injunctive relief, § 1620.33.

i)   **Allowing Plaintiff to exercise and enjoy his civil right to obtaining evidence through discovery which has been illegally deprived before UCBR, EEOC, USCA, and USDC by Judge Stengel.**

j)   Applying the 4-year statute of limitation to claims for unjust enrichment and quantum meruit.

II.     Exhaustion of Administrative Remedies:

23.     Plaintiff, is unable to exercise rights enjoyed by others, abjectly avers to being a member
of more than one protected classes seeking justice for violations:

a) Mr. Brzozowski is of Polish descent and has been discriminated and barred from the Legal
   department due to his national origin: PTC Law department is predominately white Irish
   lawyers.

b) Mr. Frank Brzozowski applied for positions that are historically held by women and he
   was discriminated for his sex; Plaintiff was wrongfully disregarded in applying for
   employment in the legal department with the elimination of the paralegal position and by
   the hiring of younger women Marcella and Sebring.

c) Mr. Brzozowski at the time of his latest employment was 58 years old and was subjected
   to age discrimination: the average age of ODI was the oldest in the PTC: ODI employees
   were subjected to hostile discriminatory practices.

d) Plaintiff has rights in Fed. R.C.P. Rule 26 Duty to Disclose; General provisions Governing
   Discovery denied by Judge Stengel and needed in drafting a well pleaded Amended
   Complaint and subsequent amendments.

e) Mr. Frank Brzozowski is a Caucasian who advocated for minorities has protection is a
   protected class; he was racially discriminated for his work in ODI with African-
   Americans, Latinos, Asians by the Caucasians who did not like minorities, and by some
   minorities who believed his Executive Assistant job should be held by a minority. ***See
   Maynard v. City of San Jose, 37 F.3d 396, 1402 (9th Cir.1994), Estate of Amos v. City
   of Page, 257 F.3d 1086, 1093-94 (9th Cir.2001).***

f) Mr. Frank Brzozowski was a Teamster Local 77 shop steward who was retaliated and
   discriminated against for his previous actions and grievances for union members and
   while in management still fraternizing with union workers and for his contributions to the
   Teamster PAC and union dues until 2013.

g) Mr. Frank Brzozowski was elected Ward Executive Committee, was an elected member of
   the Democratic State Committee and was discriminated for his political filiations and
   previous actions with the Democrats; the Republican administration and Commissioners
   were actively reducing the number of Democrats at the PTC.

h) Meeting Attorneys who do not like cases in federal courts since the litigation moves too
   quickly benefiting the defense; being pro-se the Plaintiff is at a great disadvantage against
   well connected defense "super-lawyers" who have state of the art office machines, deep
   pockets and experienced personnel.

24.     Pursuant to Rule 5.1.1 of the Local Rules of Civil Procedure of the United States District
Court for the Eastern District of Pennsylvania, and 29 U.S. Code § 187, Plaintiff avers that the
amount in controversy exceeds the jurisdictional amount of One Hundred Fifty Thousand Dollars
($150,000.00) exclusive of interest and costs.

BACKGROUND

25.     In a letter dated **December 26, 2013**, Patricia F. Schlegel, Director of Human Resources, (Exhibit "AM-28") discriminated and unfairly terminated Plaintiff for misconduct; Defendant Pennsylvania Turnpike Commission (PTC) terminated Plaintiffs medical insurance on December 31, 2013, and denied all unemployment benefits about **January 2, 2014**.

I.      Facts alleged in Amended Complaint material to the plead claims

26.     Since 1984 Mr. Brzozowski had been duly elected as a member of the 31 st Ward Democratic Executive Committee; about 2008 elected to Democratic State Committee.

27.     At the job interview, the state committee position was questioned and acknowledged by the supervisors on the panel.

28.     Plaintiffs resume (Exhibit AM-43) also lists work with former Democratic Judge Bernard Snyder and also for the City Commissioners of Philadelphia.

Mr. Brzozowski's early years with the Turnpike Commission

29.     Mr. Brzozowski won a bid and worked in August and September 2003 as a Data Systems Specialists at Network Control (IT Department) at the PTC Central Administration Building (Dauphin County).

30.     Without good car to travel about 200 miles daily, Plaintiff reluctantly accepted a reduction in pay, 20 cents an hour less, to return to District 4 as a toil supplemental collector in the Fare Collection Department in September 2003.

31.     PTC collectors are prohibited from being informed of the amounts that they would collect at the end of their shifts, and not knowing if they had made any mistake, the day that the mistake occurred, is disparate treatment; the only time that a collector realizes a mistake occurred is when a restitution letter arrives about 3 weeks after the date of the shift, with the PTC demanding a restitution payment by check.

32.     PTC Union workers, including Plaintiff, had low morale due to favoritism, bidding, locations, late hours, shortages, occasional equipment breakdowns, traveling in bad weather, being late due to traffic problems, refusal of requests and having grievances being denied.

33.     The PTC has strict policies in enforcing shortages of fare collectors; 3 shortages in a month constituted a warning letter and within 6 months another warning letter would warrant a 2-day suspension creating a stressful hostile work environment.

34.     Normally after 3 weeks the collector is unable to remember how a mistake occurred and successfully grieve the consequential disciplinary actions with the shop steward; Plaintiff contends that if he had the computer totals at the end of his shift that many grievances would not have been filed and heard by an Interchange Manager, District Manager and Human Resources Labor Specialists Pat Caro.


35.     This unfair labor practice of entrapping employees in making honest mistakes, subjecting mostly Democrats, with harsh punishment and unnecessary progressive discipline is contrary public policy; other Pennsylvania agencies and businesses that collect cash inform employees at the end of their shifts if there is a discrepancy in their collections and resolve the errors then.

Mr. Brzozowski's Secondary Employment Request

36.     Plaintiff submitted employment applications and resumes for many management positions, including the Legal Department.

37.     About December 15, 2010, Mr. Brzozowski was called into the interchange manager's office regarding his application for a legal position with a response from Human Resources, Defendant Mrs. Judy Treaster.

38.     Instead of being permitted to be interviewed for the Right of Way Acquisition Specialists position, Plaintiff was being subjected to disciplinary steps.

39.     Instead of a job interview for the position on account of Judy Treaster enforcement of the secondary employment policy, Plaintiff was subjected to an unjust disciplinary union grievance hearing and compelled to sign the oppressive secondary employment policy form to continue being employed about January 10, 2011 (Exhibit AM-35).

40.     Mr. Gillen stated that unless Plaintiff sign a secondary employment document declaring the income procured as a notary public, that he would be taken off the payroll and faced termination (Exhibit AM-34).

41.     Although Plaintiff refused to sign written warning letters about January 15, 2011, Mr. Gillen issued a command to sign the documents, or be subject to insubordination of a work order ((Exhibit AM-36).

42.     A Local 77 grievance was filed January 19, 2011 (Exhibit AM-37).

43.     On January 27, 2011, despite explaining that rarely did Plaintiff get notary customers and that the pay may not be $20/month Plaintiff executed a Secondary Employment Request instead of being taken off the payroll (Exhibit AM-39).

44.     A grievance hearing was held on February 17, 2011 before District Manager Ronald Duckett (Exhibit AM-38); disciplinary action was terminated with the execution of the Secondary Employment Request .

Mr. Brzozowski's tenure as executive assistant in the Office of Diversity and Inclusion

45.     About March 15, 2011, Plaintiff who was formerly an assistant editor and reporter submitted an article that was published at several newspapers throughout the state criticizing newly elected Governor Corbett and his Republican supporters for trying to privatize the PA Liquor Stores, the PA Lottery and the turnpike, which pumps about $450 million annually to PennDOT (Exhibit AM-44).

46.     Plaintiff was promoted to the Office of Diversity and Inclusion (ODI) as an Executive Assistant partly due to the reference that he was a member of state committee in his cover letter and resume.

47.     Defendant PTC currently subjects hundreds of Democratic fare collectors retaliation with unjust harassment, to be subjected to use a monetary system that will not be programed to calculate the proceeds instantly, and other unfair labor practices that adversely affect employees income and job security.

48.     About the time that Plaintiff was tested for Executive Assistant, Plaintiff was interviewed but not hired for Interchange Manager.

49.     About the time FTB was hired for ODI, Mike Mierzejewski, Eric Paul and Dennis McClennan (sic) were promoted to 1M for $61 K/year.

50.     When Plaintiff was selected as the Executive Assistant he thought that he heard in his phone call that his salary would be $61 K/year.

51.     During the second telephone call, FTB learned that he would have to undergo training, and until he was trained that he will stan at $50K.

52.     The IT Executive Assistant was not a policy making position and did not require political affiliation.

53.     Plaintiff was amply qualified for the Executive Assistant Position and was about to be approved by the PTC's human resource department with his qualifications.

54.     As final decision makers, acting under the color of law, Defendants Schlegel and Ross arranged scheduling, conspired and ensured that the someone else other than Mr. Brzozowski would get the position.

55.     Plaintiff started attending in-house courses at PTC UNIVERSITY
to become qualified and more efficient at his job at the PENNSYLVANIA TURNPIKE COMMISSION, to wit:

PTC in-house courses:

a.   Certified typists at 42.8 wpm,

b.   Defensive Driving Awareness Course,

c.   Sexual Harassment,

d.   Using Employee Self-Service,

e.   Human Resources Overview,

f.   Purchasing Overview,

g.   HROV-OI HCM Overview,

h.   LOPR-04 Purchasing SRM Shopping and Approval Processing,

l.   LOPR-05 Purchasing Display,

j.   LOIM-06 Manual Material Reservation Processing,

k.   LOPR-08 SRM Receiving,

l.   Excel 2010 Introductory, Excel 2010 Intermediate, Excel Advanced

m.   PowerPoint 2010 Introductory,

n.   HIPPA

o.   Effective Meeting Management,

p.   MS Word 2010 Introductory, MS Word 2010 Intermediate,

q.   Business Writing,

r.   Developing Effective Work Relationships,

s.   Workplace Violence - Crime Prevention Training,

t.   Organized and Clutter Free,

u.   Webinar: Diversity Recruitment - A Changing Workforce, A Changing Regulator Environment.

v.   Unified Communications Training Telephone Etiquette,

w.   Women's History Training Program,

x.   Understanding Yourself at Work: Personality Styles,

y.   Customer Service Training,

z.   Contract Compliance Solution Webinar,

aa.   One Note

bb.   Windows 7

cc.   Outlook 2010 Introductory

56.    FTB took training courses to improve his clerical skills; the training was intended to perform his duties at his position and proof that he had the background to perform other positions such as Interchange Manager.


57.    Shortly after being promoted, H.R. Defendant Ross attacked Plaintiff who had a severe leg burn on June 26, 2012 at a MS Word course at the ERO office (Montgomery County) by misrepresenting that Plaintiff made insulting and disparaging remarks, including a condescending comment to Eric Paul an African-American interchange manager.

58.    At the time Plaintiff did not know that Defendant Ross made a complaint to Human Resources that had a black co-worker Brian Slade fired (PTC Docket No. 201002429, EEOC No. 17F201060618.


59.    ODI duties were civil right issues which made the department disliked and unpopular with the PTC workforce of about 85% Caucasian males.

60.    In 2012 the ODI budget was about $325,000 for a department of 3 workers: M Ojo, D Carpenter and FTB.


61.    In 2013 the ODI budget was enlarged to about $400,000; 3 employees from the contracts dept were assigned to Ojo; Jon Christofer from WRO, Dom Venezia from ERO, and Clare Jones from CAB.

62.    When Plaintiff Brzozowski was calculating Bid Recommendations on and before December 11, 2013, rarely did the prime contractor who got the bid met the 10%, even though the second or third ranked prime contractor did meet the 10% criteria.

63.    When Plaintiff Brzozowski was calculating Bid Recommendations on and before December 11, 2013, rarely did the prime contractor who got the bid met the 10%, even though the second or third ranked prime contractor occasionally did meet the 10% criteria; Plaintiff protested that this practice was unfair competition.

Mr. Brzozowski's termination

64.    Plaintiffs supervisor Ojo had assigned a Bid Recommendation task to him on December 11, 2013, that was needed in her meeting with the engineers and Legal Department about a construction contract.

65.    On December 11, 2013, slightly before 9:00 am Plaintiff finished the assigned Bid Recommendation but could not print it for his boss since the office printer/copies was in use by his co-workers Carmen Rivas and Deborah Carpenter.

66.    By not being able to access the printer Plaintiff was slightly late arriving to the testing by D Ross, who retaliated by not giving Plaintiff a one minute warning before time was up.


67.    Defendant Ms. Ross lied about Brzozowski's violation of workplace violence to O cover-up her corrupt testing, and to conceal a biased selection process.

68.      During the afternoon meeting with Director Myneca Ojo, an African American, Defendant Ms. Ross demonstrated hostile and violent actions with the Excel book and she verbally threatened both of us in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish Descent and an act of national origin discrimination.

69.      Because Mr. Brzozowski's language and facial expressions clearly was not threatening but merely due to trifocals trying to focus to see the small words on the computer screen and peering over the top of the glasses frames and moreover, if a facial expression occurred, it is protected by the First Amendment for the freedom of expression.

70.      Mr. Brzozowski took his seat for the Excel test, he was always facing the computer screen entirely, while informing D Ross that the Excel book was on the table; Plaintiffs back of his head was oriented at Defendant, which was he only body part that could have been "glaring" at D Ross.

71.      The tests on December 11, 2013, with Defendant Ms. Ross were finished in about an hour around 10:00 am, then Mr. Brzozowski was interviewed before a panel of three supervisors for the HR position for about another hour to about 11 am, contradicting Mr. Caro statements against Plaintiff.

72.      During the afternoon meeting with Director Myneca Ojo, an African American, Defendant Ms. Ross demonstrated hostile and violent actions with the Excel book and she verbally threatened both of us in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish Descent and an act of national origin discrimination.

73.      In a letter dated December 26, 2013, Patricia F. Schlegel, Director of Human Resources, (Exhibit "AM-28") without evidence and proper due process Constitutional rights terminated Plaintiff for misconduct; Defendant Pennsylvania Turnpike Commission (PTC) terminated Plaintiffs medical insurance on December 31, 2013, and denied all unemployment benefits about January 2, 2014.

74.      The proceeding counts are deficient due to Judge Lawrence Stengel's June 16, 2015 Order (Apx. 53) denying Plaintiff's civil right to discovery at the earlier stage of this case which adversely altered the facts repleaded in the Amended Complaint and Second Amended Complaint.


A.      First Amendment Retaliation Claim Against the PTC for Assisting Minorities


75.      Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

76.      Defendants, PTC and employees, under color of State law, and in violation of Plaintiffs First and Fourteenth Amendment rights, and in further violation of Section 1983 of the Civil Rights Act,

retaliated against Plaintiff for exercising his First Amendment rights assist minorities in the Office of Diversity & Inclusion.

77.     The First Amendment right to criticize public officials is well-established and supported by ample caselaw; a retaliation against an individual at the turnpike exercising his or her First Amendment rights is a violation of § 1983.

78.     This second amended complaint has several causes of action arising under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 and the Pennsylvania Constitution, regarding Plaintiffs rights to exercise an enjoy free speech and the freedom of association guaranteed under the First Amendment and Fourteenth Amendment of the United States Constitution and the Pennsylvania Constitution, Article I, Section 7.

79.     Mr. Frank Brzozowski is a Caucasian who advocated for minorities; he was racially discriminated for his work with African-Americans, Latinos, Asians by the Caucasians who did not like minorities, and by some minorities who believed his Executive Assistant job should be held by a minority.

80.     Mr. Frank Brzozowski was a former Teamster Local 77 shop steward who was retaliated and discriminated against for his previous actions and grievances for union members and while in management still fraternizing with African-American union workers and for his contributions to the Teamster PAC and union dues until 2013.

81.     Mr. Frank Brzozowski was elected Ward Executive Committee, was an elected member of the Democratic State Committee and was discriminated for his political filiations and previous actions with the Democrats, many who are African-American; the Republican administration and Commissioners were actively reducing the number of Democrats at the PTC.

82.     About March 15, 2011, Plaintiff who was formerly an assistant editor and reporter submitted an article that was published at several newspapers throughout the state criticizing newly elected Governor Corbett and his Republican supporters for trying to privatize the PA Liquor Stores, the PA Lottery and the turnpike, which pumps about $450 million annually to PennDOT (Exhibit AM-44).

83.     (Some PTC Commissioners business interests would be adversely affected by income generated by the state's cash cows publicized about March 15, 2011.)

84.     At the ODI Plaintiff helped organize and arrange multicultural functions.

85.    The Pa UCP meetings were arranged by the ODI.

86.    Some members of the engineering department did not like Plaintiff when
he attempted to collect records complying prime contractors to monitor the
payments to disadvantaged and minority business enterprises.

87.    Plaintiffs supervisor Ojo had assigned a Bid Recommendation task to him on December 11,
2013, that was needed in her meeting with the engineers and Legal Department about a construction
contract.

88.    When Plaintiff Brzozowski was calculating Bid Recommendations on and before December
11, 2013, rarely did the prime contractor who got the bid met the 10% to minority business
enterprises, even though the second or third ranked prime contractor did meet the 10% criteria.

89.    When Plaintiff Brzozowski was calculating Bid Recommendations on and before December
11, 2013, rarely did the prime contractor who got the bid met the 10%, even  though the second or
third ranked prime contractor occasionally did meet the 10% criteria; Plaintiff protested that this
ongoing practice was unfair competition which continued after his firing.

90.    PTC discriminated against Plaintiff based on race, color, gender/sex, national origin and age
and affiliations with persons of the aforesaid protected groups.

91.    **Maynard v. City of San Jose, 37 F.3d 396, 1402 (9th Cir.1994), Estate of Amos v. City
of Page, 257 F.3d 1086, 1093-94 (9th Cir.2001)** protect Plaintiff's §1983 rights while subordinate
to ODI African-American women Director Myneca Ojo and Deborah Carpenter.

92.    Complaints submitted to ODI had confidentiality; Plaintiff did not know many complaints to
the ODI department.

93.    Plaintiff and coworkers at ODI experienced adverse discriminatory 1983 treatment by white
employees from other department that were solely directed to ODI staff.

   a)    ODI was moved from the first floor to the third floor across from the main offices of
         the CEO and COO.
   b)    PTC employees had on many occasions looked in the ODI cubicles including
         Plaintiff.
   c)    Several PTC employees conspired to deprive employment to members of the ODI by
         complaining to Human Resources.
   d)    Plaintiff's car had the air taken out of three tires.
   e)    Nearby departments were unfriendly or apathetic; when the finance department had a
         party Plaintiff and his ODI coworkers were not invited; when ODI conducted a
         multicultural event, everyone was invited.
   f)    Members of ODI had to take action or had actions lodged against them.
   g)    ODI Deborah Carpenter was involved in a complaint with another employee.
   h)    Law Dept. Lynn Freeman and Dave Smith falsely accused Claire Jones and Plaintiff
         of sleeping at lunchtime.

i) Human Resources Pat Caro accused Plaintiff of sleeping when he did not jump at his request.

j) H.R. Pat Caro falsely accused Plaintiff of throwing the Excel book.

k) H.R. Pat Caro submitted information to have Plaintiff denied unemployment compensation.

l) H.R. Jill Davis confiscated personal law books and private effects without returning them to Plaintiff; Plaintiff's personal property was wrongly converted to the PTC.

m) H.R employees Patricia Schlegel, Dorothy Ross, Judy Treaster, and Jill Davis illegally conducted in a civil conspiracy to defraud Plaintiff of employment.

n) H.R. Patricia Schlegel terminated Plaintiff, in her 12/26/2013 letter she falsely accused Plaintiff of workplace violence policy violation, UCBR referee found that workplace violence did not occur.

o) In the 12/26/2013 letter H.R. Patricia Schlegel accused Plaintiff of abusing the computer for his own use; however, the PTC has free Wifi to the general public, employees were found looking at porn and not fired and Plaintiff discovered some of the documents falsely accusing him of being in Harrisburg over the weekend of a great snow storm when he was at home in Philadelphia.

p) PTC Commissioners failed to conduct a fair investigation and hearing about Plaintiff's firing, to clear false information and to allow Plaintiff to protect his good working reputation.

q) During a job interview, H.R. Pat Burns tried to get Plaintiff to accuse Director Ojo of misconduct.

r) A job description for paralegal was removed from the PTC website after Plaintiff inquired about an opening in the law department.

s) PSP Troop-T Trooper Kernaghan of PTC Bowmansville barracks wrongfully issued violation with falsehoods, lied before the district justice that he had VASCAR evidence proving and submitted false documentation to the PSP to convict Plaintiff.

t) PSP Troop-T commander in the PTC CAB was given a discovery request to release documents that were not released, discovery releases are Plaintiff's civil and constitutional rights.

u) PTC advertises that it is an equal opportunity employer; thousands of PTC employees are discriminated against when they are not given the opportunity to apply for confidential positions; this is a policy that violates constitutional rights.

v) PTC wrongfully grants bids to prime contractors who do not make a good faith effort to employ 10% DBEs; some second and third place bidders establish that they meet 10% DBE quota.

w) Presently PTC retaliates against union toll collectors, some who are Plaintiff's friends and associates, by not allowing them to know their totals at the end of their shifts; although credit cards can be processed; when shortages occur, fare collection give notice of monetary shortages about 3 weeks after the occurrence.

94. PTC illegally fired Plaintiff who contends that his First Amendment right of free speech and association with non-whites, with union members and Democrats were reasons for retaliation by the PTC.

95.     Plaintiff avers that PTC commissioners, management and the privately funded PSP Troop-T were persons acting under the color of state law committing discrimination and civil rights violations.

96.     In retaliation for political firings, Mr. Brzozowski was suspended on December 12, 2013, his E-Z pass removed, most of his effects were carted to his car and his ID cards surrendered due to false accusations that assassinated his character and working reputation, violating his liberty rights and due process right to fair hearing.

97.     The First Amendment right to criticize public officials is well-established and supported by ample caselaw; a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.

98.     As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

        A     Loss of income and earning capacity;

        B     Loss of benefits of employment; and

        C     Emotional distress.

    WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

B.     First Amendment Retaliation Claim Against the Patricia Schlegel and Dorothy Ross preventing Plaintiff from interviewing for the IT position.

99.     Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

100.    In 2011 and 2012 the PTC announced that it had a several job opening in the several departments, including Human Resources, and IT Department that Plaintiff applied.
    (Exhibit "AM- 16).

101.    After toll collection, Mr. Brzozowski became an executive assistant ODI; to obtain a pay increase qualifying courses had to be attended.

102.    In September 2013 Plaintiff applied on line for a collateral move to the IT department.

103.    The IT Executive Assistant was not a policy making position and did not require political affiliation.

104.    Plaintiff was amply qualified for the Executive Assistant Position and was preparing to be approved by the PTC's human resource department with his qualifications, previous employers and identification with Democratic State Committee with his resume and credentials .

105.    As final decision makers, acting under the color of law, Defendants Schlegel and Ross arranged scheduling, conspired and ensured that the someone else other than Mr. Brzozowski would get the position.

106.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was retaliated against politically and fired before being able to interview for the IT Department.

107.    Mr. Brzozowski engaged in First Amended protected conduct by being an ODI executive assistant which helps women and non-whites who are victims of discrimination, civil rights violations and retaliation.

108.    Plaintiff's constitutionally protected conduct of First Amendment freedom of speech and associations with non-white Democrats motivated Defendants Ross and her supervisor Patricia Schlegel to conduct retaliation for events with ODI employees and previous African-American employees.

109.    Plaintiff's Claim of an illegal conspiracy to defraud employment and civil rights to keep his testing grades low, were First Amendment violations getting him fired by H.R. Schlegel and Ross; associations with Democrats, Teamsters, minorities and discriminated social underachievers, was a substantial or motivating factor for an adverse employment action by Ross and Schlegel.

110.    The conspiracy to have Plaintiff fired by members of H.R. including but not limited to Ross, Schlegel and Caro was executed before the IT position was approved.

111.    Due to political sponsors, the IT position went to a candidate with less qualifications than Plaintiff.

112.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

     D  Loss of income and earning capacity;

     E  Loss of benefits of employment; and

     F  Emotional distress.

  WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front

pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

C.    Frank T Brzozowski (FTB) v PTC for Polish national origin discrimination.

113.    Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

114.    Under Title VII, an employer may not discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin.

115.    FTB of Polish descent and of his national origin avers examples of Title VII discrimination and violations of the Pennsylvania Human Rights Act.

116.    PTC favors employees of Irish descent over Polish people:  Out of over 2000 employees, many PTC employees appear to have Irish names; few Polish employees are in the ranks. -- Polish employees are a small white minority.

117.    Many Irish employees get the best paying jobs.

118.    Many employees of Irish descent worked in the PTC Human Relations department.

119.    Most of the PTC lawyers are Irish: Employee Chart, Law Department, has McCall, Smith, Peters, McGovern, Dwyer, Romig, Feeman, Marcella, Decker, McLaughlin (Apx. 108) and afterwards Dwyer was hired.

120.    PTC law department hired Defense Counsel Katherine Meehan, Esq. whose office was about 4 miles from Congressman Patrick Meehan, a third generation Irish American, one of 4 siblings;  Congressman Patrick Meehan is listed in page 15 of the Legal 100.

> "100 The Legal Irish America is proud to present its inaugural Legal 100 feature. The following list is comprised of lawyers from all around the country who share a passion for the law and pride in their heritage."

121.    Commissioner Pasquale Deon, a PTC Secretary/Treasurer in this case, donated around $15,000 to Congressman Patrick Meehan.

122.    Other Irish political officials got Mr. Deon's donations; moreover, Commissioner Deon discriminates by not giving many Polish officials campaign donations.

124.    Being of Polish descent is a disadvantage on the turnpike in obtaining higher paying jobs.

125.    About August 2013 Plaintiff FTB asked Chief Counsel Doreen McCall about the paralegal job description and when would an opening occur.

126.    The next month the paralegal job description could not be accessed.

127.   Frank Brzozowski contends that he was a victim of intentional national origin discrimination, as a Polish man, by Human Resources specialists Defendant Dorothy Ross.

128.   Defendant Dorothy Ross, who is believed to be part Irish, is daughter to James E Ross.

129.   Ms. Ross discriminated against Plaintiff in her courses and testing by treating him worse than other employees.

130.   On December 11, 2013, Ms. Ross did not give Plaintiff a one minute warning on three tests; other employees are given 1-minute warnings.

131.   On that day Ms. Ross altered the MS Word software test where a mistake had red line strikeout that could not be erased.

132.   Ms. Ross in an agitated manner verbally threatened FTB and Director Ojo in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish descent and national origin.

133.   During the afternoon meeting with Director Myneca Ojo, an African American, Defendant Ms. Ross demonstrated hostile throws and violent actions with the Excel book and she verbally threatened in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish Descent and an act of national origin discrimination.

134.   Ms. Ross discriminated by adversely treating Plaintiff worse than other employees with an outcome that was severe, harsh, pervasive when she lied that Plaintiff violently threw the Excel book and other character assassination reports.

135.   Plaintiff was told that using the book would be cheating; to avoid being accused of misconduct, Plaintiff slid the book across a table to be out of arm's reach and to be able to examine during the break.

136.   Ms. Ross fabricated a hostile situation that did not occur; Ms. Ross created a hostile environment for Plaintiff with Human Resources and the Law Department.

137.   PTC employees who take retests get the same material in the test; Mr. Brzozowski got new material in retests from Ms. Ross.

138.   Ms. Ross calculated Plaintiff's typing speed lower than it was typed.

139.   During the afternoon meeting with Director Myneca Ojo, an African American, Defendant Ms. Ross demonstrated hostile and violent actions with the Excel book and she verbally threatened both of us in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish Descent and an act of national origin discrimination.

140.   Shortly after being promoted, H.R. Defendant Ross verbally attacked Plaintiff who had a severe leg burn on June 26, 2012 at a MS Word course at the ERO office (Montgomery County)

by misrepresenting that Plaintiff made insulting and disparaging remarks, including a condescending comment to Eric Paul an African-American interchange manager.

141.   Afterwards in June 2012, Ms. Ross falsely complained to Director Ojo that Plaintiff was condescending to a former Teamster friend, Eric Paul an African-American Interchange Manager.

142.   Plaintiff contends that Ms. Ross detrimentally affected him by having Human Resources fire him; Human Resources, as a respondeat superior, was enabled to terminate Plaintiff.

143.   Plaintiff avers that Ms. Ross treated Irish and Italian PTC employees better than FTB and probably other Polish employees (since there are not that many Poles employed).

144.   As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

          A      Loss of income and earning capacity;

          B      Loss of benefits of employment; and

          C      Emotional distress.

WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

D.   <u>FTB v PTC for sex discrimination under Title VII and Pennsylvania Human Rights Act</u>.

145.   Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

146.   FTB avers the PTC discriminated against him based upon his sex by not interviewing him for positions that were historically held by women.

147.   FTB suffered sex discrimination when younger women were hired in the legal department, IT department and in his job at the ODI department.

148.   FTB suffered sex discrimination when younger women, Marcella and Sebring were hired in the legal department, for a confidential position that was not available to PTC employees. Plaintiff is a certified paralegal with real estate courses and more qualified than Marcella and Sebring.

149.    Marcella and Sebring are better looking women than Plaintiff; both received preferential treatment by being trained for their positions, while Plaintiff who already had computer skills, many legal, and PTC courses, was very familiar with the ways and operations of the PTC.

150.    FTB had an adverse employment action by not getting experience in the law department, or to be allowed to seek promotions in the law department; in contrast, Marcella and Sebring were trained for positions that would allow advancement to better positions.

151.    Two wrongs do not make it right; confidential hires illegally exclude hundreds of qualified PTC employees.

152.    EEOC investigator Bushund condoned the hiring of Marcella and Sebring to the law department and condoned passing over Plaintiff, certified paralegal, who desired to work in the law department.

153.    EEOC investigator did not interview Plaintiff, he did not obtain a response to the Request for Production of Documents and Request for Admissions forwarded to the PTC.

154.    The PTC dishonestly holds itself to the public as an equal opportunity employer, but confidential hires are illegal and sexually discriminate by not allowing PTC male employees to be interviewed for them.

155.    Plaintiff was sexually discriminated against when the PTC replaced him with a young woman in the ODI department and hired a younger woman for the IT executive assistant in 2013 and 2014.

156.    PTC fired Plaintiff for false and bogus policy violations; other employees with accusations requiring discipline and proof of similar policy violations retained their PTC jobs.

157.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

|   |   |
|---|---|
| A | Loss of income and earning capacity; |
| B | Loss of benefits of employment; and |
| C | Emotional distress. |

WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

E.      FTB v PTC for age discrimination

158.    Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

159.    Mr. Brzozowski at the time of his latest employment was 58 years old executive assistant and was subjected to age discrimination.

160.    FTB suffered age discrimination by PTC hiring and assigning younger women for the position of executive assistant in the IT department and his previous ODI position.

161.    FTB applied for the executive assistant in the IT department.

162.    FTB was qualified as an executive assistant in the ODI department and could easily perform the duties at the IT department.

163.    In 2003 FTB worked in the IT department as a data systems specialists in PTC network control.

164.    Although FTB was an executive assistant in the ODI department, he was qualified with experience with personal computer systems, the scheduling process and the Nortel telephone switch and phone system being a former network technician for Nortel Networks.

165.    Plaintiff applied for the position about September 26, 2013; he was ready, able and interested in the lateral move to the executive assistant in the IT department.

166.    Plaintiff was discriminated against when the PTC illegally terminated him for bogus policy violations on 12/26/13 before the IT job interview could be arranged.

167.    Patricia Schlegel ordered Plaintiff off the CAB and had his some of his personal effects escorted to his car.

168.    Plaintiff was sexually discriminated against when the PTC replaced him with a young woman in the ODI department and hired a younger woman for the IT executive assistant, both were younger than 58 years.

169.    This action for declaratory, injunctive, monetary and other appropriate relief is brought to the federal Court by Plaintiff, Frank T. Brzozowski, pro-se, a member of protective class at 58 years old under ADEA, to redress intentional violations by his employer the Defendant, Pennsylvania Turnpike Commission, of rights secured to him by the laws of the United States of America.

170.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

                A.    Loss of income and earning capacity;

                B.    Loss of benefits of employment; and

                C.    Emotional distress.

WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

F.    FTB v. PTC for Quantum Meruit

171.    Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

172.    About the time that Plaintiff was tested for Executive Assistant, Plaintiff was interviewed but not hired for Interchange Manager.

173.    About the time FTB was hired for ODI, Mike Mierzejewski, Eric Paul and Dennis McClennan (sic) were promoted to 1M for $61 K/year.

174.    When Plaintiff was selected as the Executive Assistant he thought that he heard in his phone call that his salary would be $61 K/year.

175.    Before the second telephone call, after informing the IM of his new position, FTB learned that he would have to undergo training, and until he was trained that he will start at $50K.

176.    Plaintiff started attending in-house PTC University courses to become qualified and more efficient at his job.

177.    FTB took PTC University training courses to improve his clerical skills; the training was intended to perform his duties at his position and proof that he had the background to perform other positions such as Interchange Manager.

178.    ODI employees including Plaintiff endured discrimination and prejudice by the PTC in awarding a low budget about 2012-13, condoning attacks from other departments and weakening the ODI department's abilities with lack of enforcement powers of their mandate.

179.    After Mr. Brzozowski was terminated, ODI employees received salary increases; Jon Cristofer and Dominic Venezia had annual salary jumps from about $65K to $70K's.

180.     Mr. Christofer and Venezia probably did not take as many courses as Plaintiff to attain their pay increases; Mr. Brzozowski contends that he is entitled to a salary adjustment with Director Ojo and their verbal agreement.

181.     When Plaintiff was terminated, he felt foolish for allowing his salary to dip to about $50K; he believes that PTC took advantage of the low budget and the position would not have been accepted for two years.

182.     4-year statute applies to quantum meruit and unjust enrichment claims.

183.     Quantum meruit addresses the fair amount that should have been paid.

184.     Quantum Meruit -  Plaintiff needs the pay difference between about $63K in the 8th year to $50K as an executive assistant annually due to a promotion misrepresentation of advancement with qualifying courses would merit pay increase.  Salary reimbursement: 2012 About $13K in the 9th year; 2013 about $13K in the 10th year.

185.     Quantum meruit applies where the firing prohibited Plaintiff from recouping the pay increases expected, after taking training courses.

186.     As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

> A.     Loss of income and earning capacity;
>
> B.     Loss of benefits of employment; and
>
> C.     Emotional distress.

WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.


G.     FTB v. PTC for Unjust Enrichment

187.     Plaintiff hereby repleads and incorporates by reference the preceding paragraphs as though fully set forth herein at length.

188.     After 9 years Plaintiff, a certified paralegal working in fare collections, was promoted, but his annual salary went to $50K while others were started at $61K at an easier position.

189.     PTC Commission should have expanded the ODI budget another $11K to about $360K to allow for the fair budget of the salaries of the employees.

190.    PTC managers who travel have use of PTC vehicles.  PTC is unjustly enriched when Plaintiff continuously use his vehicles and puts out of pocket expenses for insurance, gas, tires, repairs and the loss of a car engine that blew in 2013.

191.    PTC discriminated against ODI and Plaintiff by allocating inadequate funds for the department; at that time ODI was the department with the smallest funding.

192.    To state a claim for unjust enrichment, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution.

193.    Plaintiff contends that PTC was unjustly enriched by about $10K annually with the unfair pay cut when he was promoted to ODI.

194.    Plaintiff in good faith wanted to have ODI become a success and the defendants should make restitution with the salary and also the lawbooks and personal effects taken by Jill Davis.

195.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff was wrongfully terminated and has sustained damages including, but not limited to:

      A.    Loss of income and earning capacity;

      B.    Loss of benefits of employment; and

      C.    Emotional distress.

WHEREFORE, Plaintiff, Frank T. Brzozowski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants compensatory damages, back pay, front pay, punitive damages, together with interest, costs and attorney's fees along with such additional relief as this Court deems fitting and proper.

H.    Relief

WHEREFORE, Plaintiff prays that the Court grant such declaratory and injunctive relief as may be appropriate, including restraining orders, injunctions, damages, and costs as well as:

Direct the defendant to option re-employing the plaintiff.
Direct the defendant to make Plaintiff whole in every way.
Direct the defendant to promote the plaintiff.
Direct the defendant to expunge unproven defamatory, scandalous and tortuous documents from his employment and court record.
Direct the defendant to prohibit job stereotyping.
Direct the defendant to rescind oppressive, unfair and unjust policies.

Direct the defendant to cease and desist having hostile workplace environments by enjoining co-workers and agents from spying on employees of a protective class that induce disciplinary actions.

Direct the defendant to prohibit secret "confidential" hiring with equal opportunity for all. Direct the defendant to train employees equally for better paying positions and that allows them to qualify into different departments.

Direct the defendant to implement upgraded equipment for efficiency and accuracy beneficial for all employees.

Direct the defendant to have compatible systems with other state agencies.

Direct the defendant to allow enforceable employment contracts with at-will employees. Direct the defendant to, if available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

## VII.    Certification and Closing

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this second amended complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needless increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law,  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the second amended complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served.  I understand that my failure to keep a current address on file with the Clerks Office may result in the dismissal of my case.

 I declare under penalty of perjury that the foregoing is true and correct.  Signed this **Friday, the 4th day of January, 2019.**

FRANK T. BRZOZOWSKI, Plaintiff
2357 E. Dauphin Street
Philadelphia, PA 19125
fbrzozow@gmail.com
215-906-3773
no fax line

EEOC Form 161 (11/09)

- /51-

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Frank T. Braszowski<br>2357 E. Dauphin Street<br>Philadelphia, PA 19125 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2014-01936 | Legal Unit | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Spencer H. Lewis, Jr.,
District Director

1/23/15

(Date Mailed)

cc:  Michael J. McGovern, Esq.
Labor & Employment Counsel
PENNSYLVANIA TURNPIKE COMMISSION
P.O. Box 67676
Office of Chief Counsel
Harrisburg, PA 17106

Exhibit AM-1

C 63



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Status Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

January 23, 2015

Our Reference:          Charge Number 530-2014-01936 re: PA Turnpike

Mr. Frank T. Brzozowski
2357 E. Dauphin Street
Philadelphia, PA 19125

Dear Mr. Brzozowski:

The evidence of record, which includes the evidence and information submitted by you and by Respondent (PA Turnpike) concerning the above-referenced charge, has been reviewed by the Commission. The following is a summary:

You were hired in 5/03 as a Supplemental Toll Collector, and in 2012 applied for, and were promoted to, Executive Assistant. Regarding the positions of Legal Assistant and Legal Secretary which you could not apply for, the record indicates that both positions were classified as "confidential," and so were not posted internally in accordance with policy.

The evidence indicates that on 12-12-13, your employment was terminated for violations of policy, following an internal investigation. On 12-11-13, the Training and Development Specialist was administering exercises for your interview for a position. She informed you that you were not to use the Excel Manual as a cross reference, at which time she observed that you whipped the manual across the table and gave her what she considered to be a terrible glare, to the point she was very frightened. This was reported this to Respondent, and an investigation was conducted. The investigation also revealed that you had violated the Electronic Communications Policy regarding computer usage. Accordingly, your employment was terminated for policy violations.

Discrimination occurs when an employer treats some individuals less favorably than other similarly situated individuals *because of* their race, color, religion, sex, national origin, age, or disability. To prove disparate treatment, the Charging Party must establish that Respondent's actions were based on a discriminatory motive. There is no evidence of any similarly situated employee, not a member of your protected bases, who committed same/similar acts but was not terminated.

While we understand that the parties to a charge have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce.

Exhibit AM-2

C 64

For these reasons, this matter will be concluded, and a Dismissal and Notice of Rights be issued to you, which will allow you to exercise your right to file a private suit in Federal District Court within ninety (90) days of your receipt of the Dismissal. Should you wish to obtain a copy of the administrative file for this charge, please write to the following address to make such a request. You must do so within the above-referenced 90-day period, which can be extended if you do file a lawsuit in court concerning this matter. Please be advised that there may be a fee if you make such a request for file disclosure. Furthermore, please note that failure to receive requested documents in a timely manner does not extend the time period for filing a lawsuit. The address is:  Equal Employment Opportunity Commission, File Disclosure Unit, 801 Market Street, Suite 1300, Philadelphia, PA  19107.

Sincerely,

William N. Busund
Investigator

-154-



**COMMONWEALTH OF PENNSYLVANIA**
Human Relations Commission
333 Market Street, 8th Floor
Harrisburg, PA 17101-2210
(717) 787-4410 voice
(717) 787-7279 TTY
www.phrc.state.pa.us

Frank T. Brzozowski                                          January 15, 2015
2357 E. Dauphin Street
Philadelphia PA 19125

RE:     Frank T. Brzozowski v PENNSYLVANIA TURNPIKE COMMISSION
        Case No. 201403034     EEOC No. 530-2014-01936

Dear Frank T. Brzozowski:

*When a charge is filed with the Equal Employment Opportunity Commission (EEOC), federal law requires EEOC to send a copy of the charge, if co-jurisdictional, to the Pennsylvania Human Relations Commission (PHRC). This happens because EEOC must afford certain state or local agencies, such as the PHRC the opportunity to investigate the complaint for 60 days. PHRC has the discretion to waive the opportunity to investigate the charge. In accordance with the Work Sharing Agreement between EEOC and the PHRC, PHRC waived the opportunity to investigate the complaint back to EEOC. This means that EEOC will not have to wait 60 days to take action on the charge.*

This is to notify you that the above referenced EEOC charge also has been filed with PHRC. PHRC considers the complaint filed with PHRC on the date the complaint is received by EEOC. PHRC's action in this regard is taken because PHRC, pursuant to Section 7 (c) of the Pennsylvania Human Relations Act, has designated EEOC in the Work Sharing Agreement as its agent for receipt of complaints initially filed with EEOC that are dual filed with PHRC.

Be advised that PHRC will take no further action on the filing at this time and no action is required on your part at this time. However, PHRC reserves the right to docket, serve and require an answer at some future date. Should PHRC elect to docket the EEOC charge as a PHRC complaint, PHRC will serve the complaint and an answer will be required.

**Subsection 41.82 of PHRC's Rules of Administrative Practice requires employers to maintain certain records until the final disposition of the complaint.**

After one year, if the case is still pending, the complainant will be notified of his/her right to file in the appropriate court of common pleas. If, at that time, the complainant does not confirm in writing that he/she wants PHRC to remain involved, then PHRC will take no further action on this filing.

**IT IS YOUR RESPONSIBILITY** to promptly notify PHRC of any change of address and phone number. If you are represented by an attorney, your attorney must file a written notice of appearance. If you change attorneys, or are no longer represented by an attorney, you must notify PHRC in writing of the change.

Sincerely,

James Kayer
Director of Compliance

Exhibit AM-3—

C 66

Run      06/25/2014
Time     16:50:29

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Charge Detail Inquiry

Page

## ACTION HISTORY

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|------|-----|------|-------------|-----------|--------|-----|-----|
| 03/21/2014 | 1 | AB | Formalize Charge | | 530 | I1 | |
| 04/29/2014 | 2 | B6 | Assign Processing Category | [D] | 530 | I1 | |
| 04/30/2014 | 3 | G1 | Assigned To Staff | 1:UN 2:W | 530 | I1 | |
| 05/12/2014 | 4 | G1 | Assigned To Staff | 1:MS1 2:W | 530 | I1 | |
| 06/25/2014 | 5 | G1 | Assigned To Staff | 1:RJ 2:W | 530 | I1 | |

## IMS NOTES

Note Date   06/12/2014   Subject   CP CAME INTO OFFICE   Created By   Roberts, Evelyn
Note CP came into office late decided to file by mail sent in inf in S.Mincy file. left other inf. Evelyn

Note Date   06/25/2014   Subject   Charge   Created By   Jackson, Robert
Note I. On May 5, 2003, Respondent hired me as a Toll Collector. On April 17, 2012, Respondent promoted me into the position of Executive Assistant. I was discharged on December 12, 2013.

II. On or about October 2013, I discovered that Alice Sebring (Female, Legal Assistant) and Anna Marcella (Female, Legal Secretary) were hired for their respective positions. I was never given the chance to apply to either position because they were not posted. Ms. Sebring and Ms. Marcella were both hired as external candidates. I also applied for Executive Assistant Information Technology on September 26, 2013, and was not selected for that position either. On December 12, 2013, I was suspended and later discharged after I was falsely accused of workplace violence by Dorothy Ross (Human Resources Specialist, Female). Ms. Ross also stated that I threw the manual across the table when I was told I could not use it.

III. I believe Respondent discriminated against me based on my age (58) and retaliation in violation of Age Discrimination in Employment Act, sex (male), national origin (Polish) and in retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, Title VII.

Note Date   06/25/2014   Subject   Intake submitted   Created By   Jackson, Robert
Note Intake submitted to supervisor.

Exhibit AM-4

C 67



**U.S. Equal Employment Opportunity Commission**
**Philadelphia District Office**

801 Market Street
Suite 1300
Philadelphia, PA 19107
(215) 440-2602
TDD: 1-800-669-6820
Fax: (215) 440-2604
1-800-669-4000

Respondent: PENNSYLVANIA TURNPIKE COMMISSION
EEOC Charge No.: 530-2014-01936
FEPA Charge No.:

June 25, 2014

Frank T. Brzozowski
2357 E. Dauphin Street
Philadelphia, PA 19125

Dear Mr. Brzozowski:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)
[ X ]    The Age Discrimination in Employment Act (ADEA)
[ ]    The Americans with Disabilities Act (ADA)
[ ]    The Equal Pay Act (EPA)
[ ]    The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to Pennsylvania Human Relations Commission 333 Market Street Floor 8 Harrisburg, PA 17126 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

*DAT for*

Karen McDonough
Enforcement Manager
(215) 440-2813

Revised 11/00

## Information For Complainants & Election Option
## To Dual File With The
## Pennsylvania Human Relations Commission

**Frank Brzozowski** vs **Pennsylvania Turnpike Commission**

EEOC No. 530-2014-01936

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHCR) under the Pennsylvania Human Relations Act. Filing your charge with the PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in manner which could affect the outcome of your case.

Complaints filed with PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charged files with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC

Since you have chosen to file you charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year of filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

### [Sign and date appropriate request below]

I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

*I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4909, relating to unsworn falsification to authorities.*

_____
Signature and Date

*I do not want my charge dual filed with PHRC.*

2014 JUN 25 P 4: 02

RECEIVED - EEOC
PHILADELPHIA, D.O.

_____
Signature and Date

Exhibit AM-6

C 69

-158-

EEOC Form 6 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 530-2014-01936 |

Pennsylvania Human Relations Commission _____ and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Frank T. Brzozowski | (215) 425-7672 | 10-19-1955 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2357 E. Dauphin Street, Philadelphia, PA 19125 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| PENNSYLVANIA TURNPIKE COMMISSION | Unknown | (717) 939-9551 |

| Street Address | City, State and ZIP Code |
|---|---|
| 700 S. Eisenhower Bouvelard, Middletown, PA 17057 | |

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☒ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | ☐ DISABILITY | ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | | | | |

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 09-20-2013 | 12-12-2013 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. On May 5, 2003, Respondent hired me as a Toll Collector. On April 17, 2012, Respondent promoted me into the position of Executive Assistant. I was discharged on December 12, 2013.

II. On or about October 2013, I discovered that Alice Sebring (Female, Legal Assistant) and Anna Marcella (Female, Legal Secretary) were hired for their respective positions. I was never given the chance to apply to either position because they were not posted. Ms. Sebring and Ms. Marcella were both hired as external candidates. I also applied for Executive Assistant Information Technology on September 26, 2013, and was not selected for that position either. On December 12, 2013, I was suspended and later discharged after I was falsely accused of workplace violence by Dorothy Ross (Human Resources Specialist, Female). Ms. Ross also stated that I threw the manual across the table when I was told I could not use it.

III. I believe Respondent discriminated against me based on my age (58) and retaliation in violation of Age Discrimination in Employment Act, sex (male), national origin (Polish) and in retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, Title VII.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jun 25, 2014 | *signature* |
| Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

2014 JUN 25  P 3 59

PHILADELPHIA, D.O.
EEOC 150

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Michael McGovern, Esq.<br>Labor & Employment Counsel<br>**PENNSYLVANIA TURNPIKE COMMISSION**<br>**P.O. Box 67676**<br>**Office of Chief Counsel**<br>**Harrisburg, PA 17106** | **Frank T. Brzozowski** |

THIS PERSON (check one or both)

| X | Claims To Be Aggrieved |
|---|---|
| | Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**530-2014-01936**

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

| [X] Title VII of the Civil Rights Act (Title VII) | [ ] The Equal Pay Act (EPA) | [ ] The Americans with Disabilities Act (ADA) |
|---|---|---|

| [X] The Age Discrimination in Employment Act (ADEA) | [ ] The Genetic Information Nondiscrimination Act (GINA) |
|---|---|

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by 3  Aug 14 a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Karen  McDonough,**<br>**Enforcement Manager**<br><br>*EEOC Representative*<br><br>*Telephone*    **(215) 440-2813** | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107**<br>**Fax: (215) 440-2604** |
|---|---|

Enclosure(s):  [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

| [ ] Race | [ ] Color | [X] Sex | [ ] Religion | [X] National Origin | [X] Age | [ ] Disability | [X] Retaliation | [ ] Genetic Information | [ ] Other |
|---|---|---|---|---|---|---|---|---|---|

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Jul 3, 2014 | **Spencer H. Lewis, Jr.,**<br>**District Director** | |

*160*

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW
Department of Labor and Industry
Commonwealth of Pennsylvania
UC-59 REV 5-09



| | |
|---|---|
| APPEAL NUMBER | 14-09-C-1303 |
| DATE MAILED | 3/18/2014 |
| FINAL DATE TO APPEAL | 4/2/2014 |
| SSN | 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 |

# REFEREE'S DECISION/ORDER

CLAIMANT

EMPLOYER

FRANK T BRZOZOWSKI
2357 E DAUPHIN ST
PHILADELPHIA PA 19125-2923
US

P A TURNPIKE COMMISSION H R
PO BOX 67676
HARRISBURG PA 17106-7676
US

**CLAIM:**

| | | | | |
|---|---|---|---|---|
| FILED: | 12/8/2013 | | | |
| DETERMINATION/S ISSUED: | 1/2/2014 | BY: | ERIE UC SERVICE CENTER | |
| CLAIMANT DETERMINED UNDER UC LAW: | | ineligible | 402(e) | |
| FOR WAITING WEEK ENDING: | | 12/14/2013 | | |
| FOR COMPENSABLE WEEK/S ENDING: | | | | |

**APPEAL:**

| | | | |
|---|---|---|---|
| FILED: | 1/17/2014 | BY: | Claimant |
| HEARING HELD: | 3/3/2014 | IN: | HARRISBURG, PA |
| ATTENDED BY: | Claimant | | |

**ENCLOSURE:** A translation document UC-1627 is enclosed with this notice.

**FINDINGS OF FACT:**

1. Claimant was last employed by the PA Turnpike Commission as an Executive Assistant working fulltime; he began working for this employer on May 5, 2003 and was earning $25.48 per hour with his last day of work being December 12, 2013

2. Claimant was discharged for violating the work place violence policy.

3. Claimant did not violate the work place policy.

4. Claimant worked to the best of his ability.

5. Claimant did not knowingly violate any the employer's policies.

**ISSUE:** Whether the claimant's action constitute wilful misconduct

**REASONING:** The Pennsylvania UC Service Center issued a determination disapproving benefits under Section 402(e) of the Pennsylvania Unemployment Compensation Law. Section 402(e) of the Law provides it a claimant shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. Willful misconduct has been defined as an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to

C 72

161.

Claimant — FRANK T BRZOZOWSKI                                    peal — 14-09-C-1303

expect of an employee, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer.

Following a timely appeal by the claimant, a hearing was scheduled before a UC Referee. Claimant appeared and testified.

Although notified of the date, time and place of the Referee's hearing, the employer did not appear to offer testimony in this appeal. The above Findings, therefore, are based entirely on the claimant's sworn testimony, which provides the only competent evidence on the record.

Where an individual is discharged from employment for the violation of an employer rule, the burden is upon the employer to prove the existence of the rule and that it was violated; then the burden of proof shifts to the claimant to prove good cause for the violation or that the rule was unreasonable.

In this case, the claimant testified that he was discharged for violating the work place violence policy. Claimant denies violating the work place policy. Further the claimant testified that he worked to the best of his ability and did not knowingly violate any of the employer's policies. Absent employer testimony to show the claimant violated the work place violence policy, the only information of the record, other than the claimant's testimony, is the UC Service Center Documents which must be considered uncorroborated hearsay. Accordingly, the employer has failed to meet their burden therefore, benefits cannot be denied under Section 402(e) of the PA UC Law.

ORDER:  The Determination of the UC Service Center is REVERSED; benefits are ALLOWED under beginning with waiting week ending December 14, 2013.

James M Hillegass, Referee

tao - 9125

Pursuant to the provisions of the Law, the above decision shall become final on the date it was mailed to the parties, unless any aggrieved party files a further appeal to the Pennsylvania Unemployment Compensation Board of Review within the fifteen (15) day appeal period.

The last date to file an appeal to this decision is 4/1/2014.

## IF YOU WISH TO FILE A FURTHER APPEAL

You have the right to file a further appeal to this decision within fifteen (15) days of the date of mailing. Your appeal must include the following information:  ► your name;  ► the claimant's name and social security number;  ► the date of the decision being appealed;  ► the reason for appeal;  ► the appeal number;  ► your address.  Under the provisions of Act 5 of 2005, you may file your own appeal, or your appeal may be filed by an attorney or by any other advocate of your choice.

You may file your appeal by mail. If you file your appeal by mail, the appeal is filed as of the date of the U.S. Postal Service postmark or a U.S. Postal Service form 3817 (Certificate of Mailing) or a U.S. Postal Service certified mail receipt. If there is no U.S. Postal Service postmark, the date of filing will be the date of a postage meter mark on the envelope containing the appeal. If the appeal contains neither a postmark nor a postage meter mark, the date of filing will be the date recorded by the Department when the appeal is received. Your appeal should be mailed to the following address:

Department of Labor & Industry
UC Board of Review
Room 1119

C 73

Claimant — FRANK T BRZOZOWSKI                                    peal — 14-09-C-1303

651 Boas Street
Harrisburg, PA 17121

**You may file your appeal by common carrier.** If you file your appeal by common carrier, the appeal is filed on the date it is delivered to the common carrier as established by the records of the common carrier. You should use the above address to send your appeal by common carrier.

**You may file your appeal by fax.** If you file your appeal by fax, it must be received by the Department by 11:59 p.m. on the last day to appeal. The filing date will be determined by the date of receipt imprinted by the receiving fax machine. If there is no receipt date imprinted by the receiving fax machine, the sender's fax banner will control the date of filing. If neither date appears on the fax, the date of receipt recorded by the Department will serve as the date of filing. Your appeal should be faxed to the following number:

717-346-4484

NOTE:  A party filing an appeal by fax is responsible for delay, disruption or interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed.

**You may file your appeal via electronic mail (e-mail).** If you file your appeal by e-mail, the appeal is filed on the date of receipt recorded by the Department's electronic transmission system. If you wish to file your appeal by e-mail, forward your appeal information to the Department at:

UCBoardAppeals@pa.gov

WARNING:  Information submitted by e-mail is not secure.
NOTE:  A party filing an appeal via the Internet or electronic mail is responsible for using the proper format and for delay, disruption or interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed.

If you wish to file your appeal in person, you may do so at any CareerLink office during normal business hours on or before the last day to appeal shown above. The CareerLink office will forward your appeal to the UC Board of Review for processing.

**Auxiliary aids and services are available upon request to individuals with disabilities.**
**Equal Opportunity Employer/Program**

C 74



FRANK T. BRZOZOWSKI, pro-se
2357 E. Dauphin Street
Philadelphia, PA 19125
215-425-7672
215-986-3773 cell
fbrzozow@gmail.com.com
                                            Impending Claim against Governmental Entity

---

FRANK T. BRZOZOWSKI                         :
2357 E. Dauphin Street                      :
Philadelphia, PA 19125                      :
plaintiff                                   :
                                            :
          VS                                :        85
                                            :
COMMONWEALTH OF PENNSYLVANIA                :
          and                               :
PENNSYLVANIA TURNPIKE COMMISSION            :
Central Administration Office               :
700 S. Eisenhower Blvd.                     :
Middletown PA 17057                         :
et al                                       :

## NOTICE PURSUANT TO 42 PA.C.S.A. § 5522 OF IMPENDING CLAIM AGAINST THE COMMONWEALTH OF PENNSYLVANIA AND PENNSYLVANIA TURNPIKE COMMISSION

Plaintiff Frank T. Brzozowski, pro-se, hereby gives notice for impending claims against the Commonwealth of Pennsylvania and the Pennsylvania Turnpike Commission for causes of actions including but not limited to violation of civil rights, unconstitutional wrongful discharge, discrimination, civil conspiracy to defraud employment, illegally denying promotion, illegal reduction in annual salary, tortuous interference with obtaining credentials and training, negligent conduct of employees, ineffective biased investigation, filing false statement, filing misrepresentations in documents, libel, slander, defamation of character by unprofessional acts and willful misconduct and creating a hostile workplace environment.

(1)     Plaintiff, Frank T. Brzozowski in the aforesaid caption, suffers damages by the responsible defendants, invoking respondent superior, include but are not limited to Governor Thomas Corbett, Secretary of Transportation, and Commissioners and Chiefs of the Pennsylvania Turnpike Commission, Patricia Schlegel, Jady Transer, Dorothy Ross, David Gentile and any employees, subordinates and agents thereof that may have committed causes of actions that are discovered later.

FRANK T. BRZOZOWSKI              -2-        Impending Claim against the PTC

(2)    The name and the residence of the person injured:
         FRANK T. BRZOZOWSKI
         2357 E. Dauphin Street
         Philadelphia, PA 19125

(3)    The date and hour of the events:
       a) Ms. Dorothy Ross of Human Resources commenced testing Plaintiff about 9:00 am on December 11, 2013;

            MS Word for 10 minutes,
            MS Excel for 20 minutes and
            MS Excel for 20 minutes.

       b) Mrs. Patricia Schlegel and Ms. Judy Treaster of Human Resources suspended Plaintiff, without pay on December 12, 2013 after a hearing in the legal department conference room.

       c) Mrs. Patricia Schlegel escorted plaintiff to his car and was met with Chief David Gentile.

       d) Mrs. Patricia Schlegel took Plaintiff's PA Turnpike Identification card, his PTC EZ-pass transponder and carted some of his belongings to his car on December 12, 2013.

       e) Mrs. Patricia Schlegel, Director of Human Resources sent Plaintiff a letter terminating his employment dated December 26, 2013.

       f) The Pennsylvania Turnpike Commission terminated Plaintiff's medical benefits on December 31, 2013.

       g) The Pennsylvania Turnpike Commission denied Plaintiff's unemployment compensation claim on January 2, 2014.

       h) The Pennsylvania Turnpike Commission illegally and unconstitutionally liquidated Plaintiff's vacation and sick time, unlawfully depreciated his seniority and annual net worth, and wrongfully aborted his pension payments, and also denied a severance package offered to other employees.

4)     The location of the occurrence:
         Pennsylvania Turnpike Commission
         Central Administration Office
         700 S. Eisenhower Blvd.
         Middletown, PA 17057.

                                   Respectfully submitted,

                                   Frank T. Brzozowski

                                   Frank T. Brzozowski, pro-se      6/11/14

-165-

FRANK T. BRZOZOWSKI, pro-se
2357 E. Dauphin Street
Philadelphia, PA 19125
215-425-7672
215-906-3773 cell
fbrzeosw@gmail.com.com

Impending Claim against Governmental Entity

---

FRANK T. BRZOZOWSKI

　　　　　　V

COMMONWEALTH OF PENNSYLVANIA
　　　　　　and
PENNSYLVANIA TURNPIKE COMMISSION

　　　　　：
　　　　　：
　　　　　：
　　　　　：
　　　　　：
　　　　　：

§§

## CERTIFICATE OF SERVICE

This is to certify that the attached NOTICE PURSUANT TO 42 PA.C.S.A. § 5522 was served on June 11, 2014 by facsimile to:

Pennsylvania Turnpike Commission
Central Administration Office
700 S. Eisenhower Blvd.
Middletown, PA 17057
By facsimile 717-920-7334 ODI & legal
By facsimile 717-986-8760 H.R

Pennsylvania Office of Attorney General
Attorney General Kathleen G. Kane
16th Floor, Strawberry Square
Harrisburg, PA 17120
By facsimile 717-787-8242

This is to certify that the attached NOTICE PURSUANT TO 42 PA.C.S.A. § 5522 was served on June 12, 2014 by first class mail to:

Chief Counsel Doreen McCall
Pennsylvania Turnpike Commission
Central Administration Office
700 S. Eisenhower Blvd.
Middletown, PA 17057

Pennsylvania Office of Attorney General
Attorney General Kathleen G. Kane
16th Floor, Strawberry Square
Harrisburg, PA 17120

The Honorable Tom Corbett
Governor
200 Main Capital Building
Harrisburg, PA 17120

Secretary of Transportation
Honorable Barry J. Schoch
400 North Street
Harrisburg, PA 17120

Frank T. Brzozowski, pro-se

C 77

-166-

**FRANK T. BRZOZOWSKI**
2357 E. Dauphin Street
Philadelphia, PA 19125
215-906-3773
fbrzozow@gmail.com

April 8, 2015

Spencer H. Lewis, Jr., District Director
Debra Lawrence, Regional Attorney
and William N. Busand, Investigator
U.S. Equal Employment Opportunity Commission
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127

via fax 215-440-2632

RE:    EEOC No. 530-2014-01936, Brzozowski v. PA Turnpike Commission (PTC),
       530201401936_BRZOZOWSKI_RED.pdf (EEOC CD 170 pages)

Dear Lady and Gentlemen:

This is a request for assistance in finding an attorney to file a lawsuit against the
Pennsylvania Turnpike Commission (PTC); the law offices or lawyers who were unable to take this
case are: George Szymanski, Kathryn Boockvar, Bob Rovner, Breandan Nemec, Faye Cohen, Mr.
Syd Gold, Fishtown Lawyers, Isaac Slepner, Ray Arreola, Kevin Lovitz and Pete Dankowiec. Before
the 90-day period expires to file the discrimination action, as referenced in the attachment, EEOC
form 161 states: "contact the EEOC representative shown on your Notice if you need help in finding
a lawyer." At http://www.eeoc.gov/employees/lawsuit.cfm under EEOC and Filing a Lawsuit, the
"EEOC office where your charge is filed may be able to give you a list of attorneys in your area who
handle cases involving employment discrimination." Spencer H. Lewis, Jr., District Director, mailed
a "Dismissal and Notice of Rights" dated 1/23/15 (EEOC pp. 10, 14). William N. Busand,
Investigator, concurrently filed a letter tolling the 90 day right-to-sue (EEOC pp. 8-9, 12-13, 22-23).

Disputing the dismissal, Mr. Busand never contacted Frank Brzozowski during the
investigation; negating complainant's right to challenge the respondent's falsehoods. Mr. Brzozowski
could not explain and define elements of retaliation, discrimination, and refute misrepresentations
entered by the PA Turnpike Commission that adversely affected the decision by your agency.
Although the PA Turnpike Commission advertises "The Pennsylvania Turnpike is an Equal
Opportunity Employer" and "An Equal Opportunity Employer " in its employment literature, Mr.
Busand states:

"You were hired in 5/03 as a Supplemental Toll Collector, and in 2012 applied for, and were
promoted to, Executive Assistant. Regarding the positions of Legal Assistant and Legal Secretary
which you could not apply for, the record indicates that both positions were classified as
"confidential," and so were not posted internally in accordance with policy." (EEOC pp. 8, 12, 22)

How can an employer (PTC) be "an Equal Opportunity Employer" and hide positions from
the PTC workforce, when in reality many jobs are granted for favoritism and nepotism, and not
posted internally but classified as "confidential?" Prior to May 2003, Frank Brzozowski was a
certified paralegal with typing and work experience, but as a supplemental toll collector complainant
was paid $15.56/hr. (EEOC p. 125) and shortly as a data systems specialists in the PTC Information

Exhibit AM-11

C 78

Frank Brzozowski                                   -2-                                       4/8/2015
EEOC No. 530-2014-01936

Technology Department Network Control area. Incidentally, the PTC subcontracts paralegal work for $75.00/hr. (EEOC p. 86) instead of hiring internally to fill their paralegal position (EEOC p. 82-84). During the first 8 years of employment, the PTC refused to promote and discriminated against Brzozowski's legal qualifications -- for new hires to the law department (EEOC p. 127-130), who started at a lower rate employment without any prior experience with the turnpike (EEOC p. 79, and p. 98 #4, #5, and #6). Afterwards they were trained. Mr. Brzozowski was also discriminated for the recent executive assistant to the Information Technology Department (EEOC p. 78) the position that he applied for on 9/26/13 but the position was given to someone with less networking qualifications.

Mr. Busund also failed to review all of the details, background and material facts in concluding that complainant was illegally fired, for violations of policy, and for not establishing acts of discrimination against complainant and his department the Office of Diversity and Inclusion (ODI), which advocated civil rights matters. ODI investigated several employees of the Human Resources, some in HR retaliated in a conspiracy against ODI employees, including but not limited to filing allegations against Mr. Brzozowski with overly harsh discipline. Ms. Dorothy Ross, a white employee from Human Resources, unjustly complained about a black co-worker, Brian Slade who was fired. Mr. Slade filed actions against the PTC Docket No. 201002429 (either EEOC No. 17F201060618 or EEOC No. 17F290160618). Mr. Brian Slade was related to the husband of ODI co-worker Deborah Carpenter, a black woman, and a former PTC HR employee. As in Brzozowski's case, Ms. Ross retaliated by lying to Human Resources (EEOC p. 137) to justify her allegation causing at least 2 terminations. Mr. Busund states:

> "The evidence indicates that on 12-12-13, your employment was terminated for violations of policy, following an internal investigation. On 12-11-13, the Training and Development Specialist was administering exercises for your interview for a position. She informed you that you were not to use the Excel Manual as a cross reference, at which time she observed that you whipped the manual across the table and gave her what she considered to be a terrible glare, to the point she was very frightened. This was reported this to Respondent, and an investigation was conducted..." (EEOC pp. 8, 12, 22)

The EEOC investigation has faults. Before the above test by Ms. Ross occurred, Mr. Brzozowski finished a "Bid Recommendation" assignment on the third floor but could not print it out since his co-worker Deborah Carpenter was printing many pages at the ODI printer. Mr. Brzozowski's work order was to complete ODI assignments that had priority over Ms. Ross's test. Mr. Busund failed to examine the room where the PTC testing occurred which had many MS Excel booklets and other PTC courses including MS Word on its shelves along opposite walls of the large table (EEOC page 45 ). Mr. Brzozowski who wears trifocal glasses, wore a suit and tie during the examination and conducted himself in a professional manner without making any threats or intimidation. At the end of the 10 minute MS Word test, Ms. Ross sat in the chair to record the test on the computer; complainant looked over his trifocals and over Ms. Ross's shoulder, to see what she was typing and afterwards left the room. Mr. Brzozowski's MS Word test was an unfair test that was rigged where red strike-through corrections could not be erased or changed; and the MS Word was modified where the text changes could not be executed in a corrections column along the right side dialogue box of the test document being proof read.

When Ms. Ross was ready for the first Excel test, Mr. Brzozowski sat in the chair facing the computer screen and informed Ms. Ross that he had his Excel book on the right side of the computer; when she objected, he slid it across the large table behind him with his right hand while he faced the computer screen. At this time Ms. Ross was in the area of the book shelves along the door side of the room and Mr. Brzozowski did not face her until after the test was finished. Ms. Ross did not go to Mr. Brzozowski's right side, the back of his head was oriented towards Ms. Ross and she could not see his face. The tests with Ms. Ross were finished in about an hour around 10:00 am, then Mr. Brzozowski was interviewed before a panel of three supervisors for the HR position for about another hour to about 11:00 am, contradicting Mr. Caro statements (EEOC p. 151, p. 66).

**Frank Brzozowski**                                -3-                                4/8/2015
EEOC No. 530-2014-01936

Ms. Ross lied about Brzozowski's violation of workplace violence (EEOC p. 137) to cover-up
her corrupt testing. During the afternoon meeting with Director Mynoea Ojo, Ms. Ross
demonstrated hostile and violent actions with the Excel book and she verbally threatened both of us
in Italian.

Mr. Basund also states:

"...The investigation also revealed that you had violated the Electronic Communications
Policy regarding computer usage. Accordingly, your employment was terminated for policy
violations." (EEOC pp. 8, 12, 22)

PA Turnpike Commission built 17 service plazas (EEOC p. 109) with free Wifi internet
access for patrons. People including PTC employees and their business partners, associates and
contractors are able to use the free internet for an unlimited time at PTC service plazas. Mr.
Brzozowski contends that the vast internet usage (EEOC p. 157-159) was PTC related including
legal and civil rights research, contract awards, prevailing wages, PA UCP certifications, illegal
police profiling, commission meetings, veterans discrimination , job fairs, college events, African-
American topics, ODI ethnic heritage months' programs and speakers to familiarize whites with
diversity. Contrary to Mrs. Schlegel's documentation (EEOC p. 147 ) complainant's PTC IP
computer address at ODI was hijacked Saturday 12-7 and Sunday12-8-13 when he was in
Philadelphia; Mrs. Schlegel wrongfully accused him of abusing the computer. Mr. Brzozowski
practiced on his computer after hours to become more efficient for the PTC. Mr. Brzozowski denies
lodging at the Central Office, although at other locations such as Downingtown Interchange he has
worked as long as 32 hours consecutively.

The issue of Mr. Brzozowski's willful misconduct, workplace violence and other policy
violations were adjudicated before the PA. UCBR appeal number 14-09-C-1303. Referee James M.
Hillegass states: "3. Claimant did not violate the workplace policy..." "5. Claimant did not knowingly
violate any the employer's policies. " (EEOC p. 46) "...When an individual is discharged from
employment for the violation of an employer rule, the burden is upon the employer to prove the
existence of the rule and that it was violated; then the burden of proof shifts to the claimant to prove
good cause for the violation or that the rule was unreasonable." (EEOC p. 47)   Mr. Brzozowski did
not have any reason and motive to disrespect or threatened Ms. Ross.

Mr. Basund conducted a biased one-sided investigation without allowing Mr. Brzozowski to
refute the falsehoods submitted by the PTC. Complainant studied and practiced for Ms. Ross's tests
to add to his qualifications for positions such as with the IT Department which has opportunities for
advancement and better pay than ODI. The PA Turnpike Commission did not respond to Frank
Brzozowski's Request for Admissions (EEOC pp. 50-53); the averments in the admissions should be
deemed admitted since none were denied. Mr. Basund failed to investigate the facts in the
admissions or interview the persons therein with sworn statements. Disregarding Frank
Brzozowski's Request for Admissions (EEOC pp. 50-53) violated Complainant's rights to a fair
EEOC decision.

Retaliations occur at the PTC when someone complains about wrongful actions or
questionable treatment, and the secret myriad of discriminatory practices of managers or their kin
target victims with selective or oppressive policy enforcement. HR Director Patricia Schlegel's
Executive Assistant Jill E. Davis wanted to destroy Mr. Brzozowski's law books and personal items
after termination, adding another hostile workplace incident. The 3.2 External Employee
Communications Policy and 3.10 Code of Conduct Policy gives PTC ability to fire employees for
speaking about working related matters and communicating with former employees, which hampers
acquiring information of other employees who were or were not subjected to discrimination,
retaliation, discipline, wrongful discharge, terminations and lawsuits against the PTC. ODI is

C 80

occasionally powerless against some favoritism, nepotism, unable to enforce 10% of the bids in contracts and Request for Proposals (RFP) to DBEs (Disadvantaged Business Enterprises) sub-contractors, unfair and wrongful calculation of tests to screen and exclude applicants, disparagement of union employees, and failing to train union employees for promotions contrary to Teamster 77 & 250 Contract, Section 5 Training.

Nepotism protects PTC employees working at the Central Office, such as Patricia Schlegel, Director Human Resources, Robert Schlegel, Purchasing Department,  Dolly Schlegel receptionist. HR Specialists Dorothy Ross is the daughter of past PA Senator James K. Ross. Favoritism protects James Gerlach, Facilities & Energy Management Operations who is related to ex-Congressman Jim Gerlach; Jeffery H. Hess, Director of Fare Collection is the son of former Pa. Representative Dick Hess; Susan Zug, Operations Analyst is related to ex-Pa Representative Peter J. Zug; Doreen McCall, Chief Counsel, and Jim McCall former Harrisburg Interchange Manager are related to ex-Pa. Representative Keith R. McCall.  Other PTC employees with powerful relatives were: Mark Bodack (son of a retired state senator); Daniel Dodaro (Commissioner's son); Ronald Diniani (nephew of a Pa. Senator), Douglas James Manderino (son of a former House Speaker); and, Fred Trello (son of a former state representative).  Included with above, Patrick Caro, David Smith, and Lynn Feeman are free of scrutiny and searches of their PTC hard drives for personal and non-turnpike material and internet use for personal reasons.

Complainant did not get a warning letter and was deprived of due process.  Frank Brzozowski did not get the fair progressive discipline stages and an official hearing as many employees including union personnel, who are accused of misconduct and violations of policies. Teamsters Local s 77, 250 and 30 have histories of wrongful firings and discrimination by the PTC. Mr. Brzozowski is the victim of  unfair and disparate treatment for working at the Office of Diversity & Inclusion and consequently had been blacklisted from the Legal Department and Information Technology Department.

Frank Brzozowski as a victim of civil rights violations needs a lawyer, without one, complainant will be compelled to file the action pro-se. He needs authorization to access EEOC law library for sample complaints and forms to be filed with the court.  This is a request for helpful information needed to submit this case to Court.

Kindly respond to my request to secure legal counsel or reopen this EEOC investigation against the Pennsylvania Turnpike Commission (PTC).

Very truly yours,

*Frank T. Brzozowski*

Frank T. Brzozowski
fbrzozow@gmail.com


enc.

Ĉ R1

-/70-



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
#### Philadelphia District Office

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia States Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

January 23, 2015

Our Reference:        Charge Number 530-2014-01936  re: PA Turnpike

Mr. Frank T. Brzozowski
2357 E. Dauphin Street
Philadelphia, PA 19125

Dear Mr. Brzozowski:

The evidence of record, which includes the evidence and information submitted by you and by Respondent (PA Turnpike) concerning the above-referenced charge, has been reviewed by the Commission.  The following is a summary:

You were hired in 5/03 as a Supplemental Toll Collector, and in 2012 applied for, and were promoted to, Executive Assistant.  Regarding the positions of Legal Assistant and Legal Secretary which you could not apply for, the record indicates that both positions were classified as "confidential," and so were not posted internally in accordance with policy.

The evidence indicates that on 12-12-13, your employment was terminated for violations of policy, following an internal investigation.  On 12-11-13, the Training and Development Specialist was administering exercises for your interview for a position.  She informed you that you were not to use the Excel Manual as a cross reference, at which time she observed that you whipped the manual across the table and gave her what she considered to be a terrible glare, to the point she was very frightened.  This was reported this to Respondent, and an investigation was conducted.  The investigation also revealed that you had violated the Electronic Communications Policy regarding computer usage.  Accordingly, your employment was terminated for policy violations.

Discrimination occurs when an employer treats some individuals less favorably than other similarly situated individuals *because of* their race, color, religion, sex, national origin, age, or disability.  To prove disparate treatment, the Charging Party must establish that Respondent's actions were based on a discriminatory motive.  There is no evidence of any similarly situated employee, not a member of your protected bases, who committed same/similar acts but was not terminated.

While we understand that the parties to a charge have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce.

C 82

-171-

For these reasons, this matter will be concluded, and a Dismissal and Notice of Rights be issued to you, which will allow you to exercise your right to file a private suit in Federal District Court within ninety (90) days of your receipt of the Dismissal.  Should you wish to obtain a copy of the administrative file for this charge, please write to the following address to make such a request.  You must do so within the above-referenced 90-day period, which can be extended if you do file a lawsuit in court concerning this matter. Please be advised that there may be a fee if you make such a request for file disclosure.  Furthermore, please note that failure to receive requested documents in a timely manner does not extend the time period for filing a lawsuit.  The address is:  Equal Employment Opportunity Commission, File Disclosure Unit, 801 Market Street, Suite 1300, Philadelphia, PA  19107.

Sincerely,

William N. Busund
Investigator

C   83

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   —   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you receive this Notice. Therefore, you should keep a **record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   —   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   —   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   —   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

3/30/2015



Enter search terms... | Search

---

*Home > Employees & Applicants*

Overview

Coverage

Timeliness

Filing A Charge

How to File

Charge
Handling

Confidentiality

Mediation

Remedies

Existing Charges

Filing a Lawsuit

Discrimination by
Type

Age

Disability

Equal
Compensation

Genetic
Information

Harassment

National Origin

Pregnancy

Race/Color

Religion

Retaliation

Sex

Sexual
Harassment

Prohibited Practices

## Filing a Lawsuit

*Note:* Federal employees and job applicants have a <u>different complaint process</u>.

If you plan to file a lawsuit alleging discrimination on the basis of race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability, genetic information, or retaliation, you first have to <u>file a charge</u> with one of our field offices (unless you plan to bring your lawsuit under the Equal Pay Act, which allows you to go directly to court without filing a charge). We will give you what is called a "Notice-of-Right-to- Sue" at the time we dismiss your charge, usually, after completion of an investigation. However, we may dismiss for other reasons, including failure to cooperate in an investigation. This notice gives you permission to file a lawsuit in a court of law. Once you receive a Notice-of-Right-to- Sue, you must file your lawsuit within 90 days. We cannot extend this deadline except when the District Director gives the parties a written notice of intent to reconsider before the deadline for filing a lawsuit. If you don't file in time, you may be prevented from going forward with your lawsuit.

## Exceptions When Filing a Lawsuit

If you plan to file an age discrimination lawsuit, you won't need a Notice of Right-to-Sue to file in court. You can file anytime after 60 days have passed from the day you filed your charge (but no later than 90 days after you receive notice that our investigation is concluded). If you plan to file a lawsuit under the Equal Pay Act, you don't have to file a charge or obtain a Notice of Right-to-Sue before filing. Rather, you can go directly to court, provided you file your suit within two years from the day the discrimination took place (3 years if the discrimination was willful).

Keep in mind, though, Title VII also makes it illegal to discriminate based on sex in the payment of wages and benefits. If you have an Equal Pay Act claim, there may be advantages to also filing under Title VII. In order to pursue a Title VII claim in court, you must have filed a charge with EEOC and received a Notice of Right-to-Sue.

## Filing Before the Investigation is Completed

If you want to file a lawsuit before we have finished our investigation, you can request a Notice of Right-to-Sue. If more than 180 days have passed from the day you filed your charge, we are required by law to give you the notice if you ask for it. If fewer than 180 days have passed, we will only give you the notice if we will be unable to finish our

C 85

investigation within 180 days. You should request the Notice of Right-to-Sue in writing and send it to the Director of the EEOC office where your charge is filed. Include in your request the names of the parties and, if possible, your charge number. Once you have been given a Notice of the Right-to-Sue, we will close the case and take no further action. So if you want EEOC to continue investigating your charge, don't request the Notice of Right-to-Sue.

## EEOC and Filing a Lawsuit

EEOC files employment discrimination lawsuits in select cases. When deciding whether to file a lawsuit, we consider several factors, including the seriousness of the violation, the type of legal issues in the case, and the wider impact the lawsuit could have on our efforts to combat workplace discrimination. Because of limited resources, EEOC cannot file a lawsuit in every case where discrimination has been found.



However, the EEOC office where your charge is filed may be able to give you a list of attorneys in your area who handle cases involving employment discrimination.



Privacy Policy | Disclaimer | USA.Gov

IN THE UNITED STATES DISTRICT COURT
FOR THE _____ DISTRICT OF _____
_____ DIVISION
*(Write the District and Division, if any, of
the court in which the complaint is filed)*

_____
_____
_____

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

_____
_____
_____

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

Complaint for Employment
Discrimination

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes ☐ No
*(check one)*

---

I.  The Parties to This Complaint

A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach
additional pages if needed.

Name                    _____
Street Address          _____
City and County         _____
State and Zip Code      _____
Telephone Number        _____
E-mail Address          _____

B.  The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation. For an individual defendant, include the person's job or title (if
known). Attach additional pages if needed.

Defendant No. 1
Name                    _____
Job or Title            _____
(if known)
Street Address          _____
City and County         _____
State and Zip Code      _____
Telephone Number        _____
E-mail Address          _____
(if known)

Defendant No. 2
Name                    _____
Job or Title            _____
(if known)
Street Address          _____
City and County         _____

2

---

State and Zip Code      _____
Telephone Number        _____
E-mail Address          _____
(if known)

Defendant No. 3
Name                    _____
Job or Title            _____
(if known)
Street Address          _____
City and County         _____
State and Zip Code      _____
Telephone Number        _____
E-mail Address          _____
(if known)

Defendant No. 4
Name                    _____
Job or Title            _____
(if known)
Street Address          _____
City and County         _____
State and Zip Code      _____
Telephone Number        _____
E-mail Address          _____
(if known)

C.  Place of Employment

The address at which I sought employment or was employed by the defendant(s)
is:

Name                    _____
Street Address          _____
City and County         _____
State and Zip Code      _____
Telephone Number        _____

3

---

II.  Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that
apply)*:

☐  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you
must first obtain a Notice of Right to Sue letter from the Equal
Employment Opportunity Commission.)*

☐  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C.
§§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age
Discrimination in Employment Act, you must first file a charge with the
Equal Employment Opportunity Commission.)*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112
to 12117.

*(Note: In order to bring suit in federal district court under the Americans
with Disabilities Act, you must first obtain a Notice of Right to Sue letter
from the Equal Employment Opportunity Commission.)*

☐  Other federal law *(specify the federal law)*:

☐  Relevant state law *(specify, if known)*:

☐  Relevant city or county law *(specify, if known)*:

III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought. State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct. If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph. Attach
additional pages if needed.

4

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply):*

- ☐  Failure to hire me.
- ☐  Termination of my employment.
- ☐  Failure to promote me.
- ☐  Failure to accommodate my disability.
- ☐  Unequal terms and conditions of my employment.
- ☐  Retaliation.
- ☐  Other acts *(specify):* _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s) _____

C.  I believe that defendant(s) *(check one):*

- ☐  is/are still committing these acts against me.
- ☐  is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain):*

- ☐  race _____
- ☐  color _____
- ☐  gender/sex _____
- ☐  religion _____
- ☐  national origin _____
- ☐  age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☐  disability or perceived disability *(specify disability)* _____

E.  The facts of my case are as follows.  Attach additional pages if needed.

5

---

_____
_____
_____
_____
_____
_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.  Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)* _____

B.  The Equal Employment Opportunity Commission *(check one):*

- ☐  has not issued a Notice of Right to Sue letter.
- ☐  issued a Notice of Right to Sue letter, which I received on *(date)* _____

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one):*

- ☐  60 days or more have elapsed.
- ☐  less than 60 days have elapsed.

6

---

V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_____
_____
_____
_____
_____

VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____, 20__.

Signature of Plaintiff _____
Printed Name of Plaintiff _____

7

---

B.  For Attorneys

Date of signing: _____, 20__.

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Address _____
Telephone Number _____
E-mail Address _____

8



# THE LEGAL 100

## John McNicholas



John P. McNicholas III is a senior partner at the Los Angeles law firm of McNicholas and McNicholas. Recent court victories included a $5.4 million settlement on behalf of the Isley Brothers against Sony Music and singer Michael Bolton. He also won a $1.67 million settlement for a single mother who sustained serious injury from an over-the-counter dietary supplement.

McNicholas received his bachelor's degree from the University of California, Los Angeles and his law degree from Loyola Law School. He received Loyola's Board of Governors Award in 2000 and has served on the advisory board to UCLA's Catholic Center since 2000.

McNicholas is a third-generation Irish-American whose father's family hails from County Mayo and whose mother, Rosemary's, from Cork. He is a member of the Society of the Friendly Sons of St. Patrick's Executive Board and the Irish American Bar Association, which awarded him the Daniel O'Connell Award in 2005. McNicholas is married and has seven children.

## Patrick Meehan

Patrick Meehan, who until recently served as United States Attorney for the Eastern District of Pennsylvania, first began his public service work in 1995 when appointed District Attorney of Delaware County, Pennsylvania. As U.S. Attorney, Patrick pioneered the Anti-Terrorism Task Force, which has since been touted as a national model for the prevention of future terrorist attacks. His most recent accomplishment, the "Route 222 Corridor Anti-Gang Initiative," brings together faith-based and community efforts



with local, state and federal law enforcement to establish safer neighborhood conditions across five cities and four counties in Pennsylvania.

On July 21, 2008, Meehan joined Conrad O'Brien Gellman & Rohn, P.C. where his focus will be on representing multi-national corporations and individuals and a wide range of corporate commercial litigation.

Meehan graduated from Bowdoin College in Maine and earned his J.D. from Temple University. A Philadelphia native, he is a third-generation Irish-American with roots in County Mayo and enjoys the sounds of the contemporary Irish band the Corrs. He is married with three children.

## Greg Milmoe



As Partner and Co-head of Corporate Restructuring at Skadden, Arps, Slate, Meagher and Flom, LLP, Greg Milmoe plays a leadership role in the Los Angeles firm's numerous restructurings, acquisitions and financings. His career with Skadden began before he even graduated law school, as a mailroom assistant in 1971.

A graduate of Fordham University Law School, Milmoe received his A.B. from Cornell University. As a corporate lawyer, Milmoe has received accolades for his ability to fashion pragmatic solutions to complex problems from differing legal disciplines. In 2007, *The American Lawyer* awarded Milmoe its Dealmaker of the Year award, and he has also been named to Turnarounds and Workouts's list of the top dozen restructuring lawyers in America.

Milmoe's achievements aren't limited to law: in 2006 he was honored by the Partnership for Afterschool Education as its Afterschool Champion, and in 2008 he helped win the Lawyer's Cup for Skadden's ice hockey team.

Milmoe's father's family hail from Sligo, while his mother's come from Galway. He is married with two children.

## John Meehan

John J. Meehan is a retired District Attorney in California's Alameda County.

He began working in the state District Attorney's office in 1960, having graduated from the University of San Francisco, School of Law. He had been inspired by his father who was a police captain, active in the predominantly Irish community of



Eureka Valley near San Francisco, to pursue a career in prosecution.

Meehan, who was named the St. Thomas More Lawyer of the Year in 2003, also has a talent for the written word, starting a publication called *Point Of View*, which reviewed cases from the United States Supreme Court and the California courts. He continues to write a column for a statewide legal publication called *Did You Know.*

Meehan's paternal grandparents hailed from County Leitrim and his mother's family was from County Cork. He and his wife, who is part Irish-American, had four children, three living, and spent their thirtieth wedding anniversary in Ireland.

## George Mitchell

Former senator George J. Mitchell has a name that is synonymous with the Northern Irish peace process, having chaired the talks which led to the Good Friday Agreement. A partner in the New York City law firm DLA Piper, Mitchell served as a U.S. senator from Maine for fifteen years and was voted the "most respected member" for six consecutive years. He served as Senate Majority Leader and was instrumental in the reauthorization of the Clean Air Act and Americans with Disabilities Act. He served as Chairman of the International Commission on Disarmament in Northern Ireland, for which he received the Nobel Peace Prize and Presidential Medal of Freedom.

Mitchell also served as Chairman of the International Crisis Group, and has been appointed Chancellor of the Queen's University in Northern



Ireland. He recently headed an investigation into past steroid use in major league baseball.

A Maine native, Mitchell received his bachelor's degree from Bowdoin College and his law degree from the Georgetown University Law Center. He is a second-generation Irish-American.

## Donald Molloy

Justice Donald Molloy worked in private practice, where he focused on civil litigation, before he was appointed U.S. District Judge for the District of Montana, Missoula Division in 1996. With jurisdiction over a vast amount of federal land, including ten national forests, Molloy has been colored as "one of the greenest judges in the West" by *High Country News*, a magazine dedicated to reporting environmental news in the West.

Judge Molloy graduated with a B.A. in Political Science from the University of Montana, and received his J.D. from the university's Law School after serving five years active duty in the U.S. Navy. His Irish ancestors emigrated from Counties Offaly and Cork to Montana. Of his sense of Irish connection in America, Donald says, "Being Irish is being part of a very large clan that tends to take care of its members socially, spiritually and in their essence." Judge Molloy instituted an internship program under which law students at University College Cork have the opportunity to attend the University of Montana.

He has been married to Judith for 37 years and they have five children.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK T. BRZOZOWSKI | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 15-2339 |
| | : | |
| PENNSYLVANIA TURNPIKE | : | |
| COMMISION, *et al.* | : | |

## <u>ORDER</u>

**AND NOW**, this 28ᵗʰ day of November 2018, upon considering Defendants' Motion to dismiss (ECF Doc. No. 41) the amended Complaint (ECF Doc. No. 38), Plaintiff's Opposition (ECF Doc. No. 65), and for reasons in the accompanying Memorandum, it is **ORDERED** Defendants' Motion to dismiss (ECF Doc. No. 41) is **GRANTED**:

    1.    **With prejudice** as to Plaintiff's claims under:

        a.  Title VII, Pennsylvania Human Rights Act, and Age Discrimination in Employment Act claims against William K. Lieberman, A. Michael Pratt, Pasquale T. Deon, Sr., Patricia Schlegel, Dorothy Ross, Sean Logan, Barry J. Schoch, Judy Treaster, Patrick Caro, Jill Davis, David Smith and Lynn Feeman;

        b.  First Amendment retaliation for (1) refusing to sign secondary employment documents, (2) his political affiliation with the Democratic Party, (3) criticizing Republican privatization ventures;

        c.  the Pennsylvania whistleblower statute;

        d.  the Fair Labor Standards Act, the Fair Pay Act, and the Equal Pay Act against individual Defendants;

        e.  unjust enrichment or quantum meruit against individual Defendants; and,

        f.  the due process clause;

2.      **Without prejudice** as to Plaintiff's claims against the Pennsylvania State Police, Cpl. Kernaghan and Governor Corbett subject to possible renewal of claims upon accrual in accord with the accompanying memorandum;

3.      **Without prejudice** with leave granted to Plaintiff to plead facts and amend claims consistent with the accompanying Memorandum and Fed.R.Civ.P. 11 no later than **January 4, 2019** to assert (1) First Amendment retaliation claim against the Turnpike Commission for his assisting minorities; (2) First Amendment retaliation claim against Patricia Schlegel and Dorothy Ross for preventing him from interviewing for the IT position; (3) Fair Labor Standards Act, Equal Pay Act, Fair Pay Act, quantum meruit, and unjust enrichment claims against the Turnpike Commission; and, (4) national origin, sex, and age discrimination claims against the Turnpike Commission; and,

4.      Absent a timely amendment, we will close this case.


_____
KEARNEY, J.

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK T. BRZOZOWSKI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 15-2339** |
| | : | |
| **PENNSYLVANIA TURNPIKE** | : | |
| **COMMISION**, *et al.* | : | |

ENT'D NOV 2 9 2018

## MEMORANDUM

**KEARNEY, J.**                                       **November 28, 2018**

A discharged Pennsylvania Turnpike Commission employee allegedly once active in the Philadelphia Democratic Party *pro se* sues his former employer and a wide variety of allegedly affiliated persons[1] arguing they are unjustly enriched by his services. To invoke our limited jurisdiction, he also alleges they: retaliated against him for exercising his First Amendment rights; violated Pennsylvania's Whistleblower Law, the Fair Labor Standards Act, the Fair Pay Act, and the Equal Pay Act; discriminated against him based on national origin, sex and age; and, fired him without due process. Many of his claims are barred by the statute of limitations; others fail for a lack of facts which possibly could be amended in accord with this Memorandum. The Commission and its co-defendants move to dismiss. We grant the motion to dismiss in the accompanying Order dismissing some claims with prejudice and others without prejudice to allow the discharged employee an opportunity to plead timely claims with fact support if possible under governing law and Federal Rule of Civil Procedure 11.

I.        **Facts alleged in Amended Complaint material to the plead claims.**[2]

Since 1984 until at least his filing of an Amended Complaint, Frank T. Brzozowski has served as a member of the 31st Ward Democratic Executive Commission.[3] Since 2008, he has served on the Democratic State Committee.[4] Mr. Brzozowski includes on his resume work experience with former Judge Bernard Snyder and the City Commissioners of Philadelphia.[5]

### Mr. Brzozowski's early years with the Turnpike Commission.

On May 5, 2003, the Pennsylvania Turnpike Commission (Commission) hired Mr. Brzozowski as a supplemental toll collector. He briefly worked in the IT Department but then returned to his supplemental toll collector position in September 2003.[6]

The Commission does not tell toll collectors the amounts they collect during shifts.[7] If a toll collector incurs a shortage in collecting fares, the Commission first notifies the collector three weeks later and demands a restitution payment by check.[8] The Commission maintained a policy for enforcing toll collectors' shortages: "three shortages in a month constituted a warning letter and within 6 months another warning letter would warrant a 2-day suspension."[9] Mr. Brzozowski claims he could not remember mistakes three weeks later, making it difficult to successfully grieve the resulting disciplinary action.[10] Mr. Brzozowski alleges other unidentified Pennsylvania agencies and businesses collecting cash inform employees of discrepancies at the end of the shift.[11]

### Mr. Brzozowski's Secondary Employment Request.

Mr. Brzozowski applied for management positions at the Commission, including positions in the Legal Department.[12] Around December 15, 2010, Ms. Treaster called Mr. Brzozowski into Interchange Manager Frank Gillen's office regarding Mr. Brzozowski's application for a Legal Department position.[13] During the meeting, Ms. Treaster "subjected [Mr. Brzozowski] to disciplinary steps."[14] Ms. Treaster informed Mr. Brzozowski based on his application, she

determined he also worked for a real estate broker and he would have to file a Secondary Employment Request with Human Resources.[15]

Around January 10, 2011, Mr. Gillen told Mr. Brzozowski to sign the secondary employment paperwork.[16] Mr. Gillen told Mr. Brzozowski if he did not sign the paperwork, "he would be taken off the payroll and faced termination."[17] Around January 15, 2011, Mr. Gillen commanded Mr. Brzozowski to sign the secondary employment paperwork or face an insubordination violation.[18] On January 19, 2011, Mr. Brzozowski filed a union grievance complaining of the secondary employment policy.[19]

On January 27, 2011, Mr. Brzozowski signed the secondary employment paperwork.[20] On February 17, 2011, District Manager Ronald Duckett held a grievance hearing and subsequently terminated the disciplinary action.[21]

### *Mr. Brzozowski's tenure as executive assistant in the Office of Diversity and Inclusion.*

On March 15, 2011, Mr. Brzozowski published an op-ed in several unnamed Pennsylvania newspapers.[22] Mr. Brzozowski criticized Governor Corbett and his Republican supporters for "trying to privatize the PA Liquor Stores, the PA Lottery and the turnpike, which pumps about $450 million annually to PennDOT."[23]

Notwithstanding these several challenges and critical op-ed, over a year later on April 17, 2012, the Commission promoted Mr. Brzozowski to Executive Assistant in the Office of Diversity and Inclusion.[24] Around the time he "was tested for Executive Assistant," Mr. Brzozowski applied for an Interchange Manager position but the Commission declined to promote him.[25] The Commission promoted employees Mike Mierzejewski, Eric Paul, and Dennis McClennan to Interchange Manager with salaries of $61,000 per year.[26] When Mr. Brzozowski learned of his

3

promotion, he thought he heard his new salary was $61,000 per year.[27] During a second phone call, he learned his salary was $50,000 per year and he would have to train for his new position.[28]

Around the time of his promotion, the Commission posted an IT Executive Assistant position.[29] The position was not a policy-making position and did not require political affiliation.[30] Mr. Brzozowski alleges he was qualified for the position but Mses. "Schlegel and Ross arranged . . . conspired and ensured that someone other than Mr. Brzozowski would get the position."[31]

After his promotion, Mr. Brzozowski began taking courses at "PTC University," an in-house educational program.[32] Mr. Brzozowski took these courses "to become more qualified and more efficient at his job," to "improve his clerical skills," to "perform his duties at his position," and to prove "he had the background to perform other positions such as Interchange Manager."[33]

On June 26, 2012, Ms. Ross claimed Mr. Brzozowski made insulting and disparaging remarks, including a condescending comment to Eric Paul, a black interchange manager.[34] Mr. Brzozowski later discovered Ms. Ross commented to Human Resources resulting in the termination of Brian Slade, a black co-worker.[35]

The Office of Diversity and Inclusion handles civil rights issues.[36] Mr. Brzozowski alleges the Office was unpopular with the Commission's eighty-five-percent, white male workforce.[37] In 2012, the Office employed three people with a budget of about $325,000.[38] In 2013, the Office added three employees and its budget increased to $400,000.[39]

As Executive Assistant, Mr. Brzozowski calculated bid recommendations for Commission construction projects to determine if the prime contractor met the 10% "Disadvantaged Business Enterprises" quota.[40] Mr. Brzozowski claims on and before December 11, 2013, he protested when contractors chosen for the project did not meet the 10% quota and the second or third ranked contractor did meet the quota.[41]

4

### *Mr. Brzozowski's termination.*

On December 11, 2013, Ms. Ojo assigned a task to Mr. Brzozowski.[42] Mr. Brzozowski finished the task but could not print a document because co-workers Carmen Rivas and Deborah Carpenter were using the printer.[43] After finally printing, he arrived late to a Microsoft Excel test Ms. Ross conducted.[44] Mr. Brzozowski claims Ms. Ross retaliated against him by failing to give a one-minute warning at the end of the test.[45] Ms. Ross claimed Mr. Brzozowski committed a "violation of workplace violence" during the test.[46]

Mr. Brzozowski attaches an email from Ms. Ross to Ms. Schlegel regarding the Excel test.[47] Ms. Ross wrote Mr. Brzozowski arrived ten minutes late to the test with an Excel manual.[48] When Ms. Ross told him he could not use the Excel manual during the test, Mr. Brzozowski "took the manual and whipped it across the table and gave [Ms. Ross] a terrible glare."[49] Ms. Ross was "very scared."[50] Mr. Brzozowski alleges Ms. Ross lied to "cover-up her corrupt testing, and to conceal a biased selection process."[51] Mr. Brzozowski further alleges Ms. Ross falsely claimed he glared at her and made "threatening" facial expressions during the test.[52] Mr. Brzozowski claims he was merely "trying to focus to see the small words on the computer screen and peering over the top of the glasses frames."[53]

After the test, three unnamed supervisors interviewed Mr. Brzozowski for an HR position.[54] Later that day, Ms. Ross "demonstrated hostile and violent actions with [an] Excel book" and "verbally threatened [Mr. Brzozowski and Ms. Ojo] in Italian."[55] Mr. Brzozowski is of Polish descent.[56]

On December 26, 2013, Ms. Schlegel terminated Mr. Brzozowski for misconduct.[57] Ms. Schlegel listed grounds for termination in a letter, including spending the night at his work area on December 10, 2013 and using the computer system for personal reasons during overnight hours

5

from August to December 2013.[58] Ms. Schlegel also listed the December 11, 2013 Microsoft Excel

test when Mr. Brzozowski "threw the Excel manual across the table and glared at [Ms. Ross]."[59]

She explained Mr. Brzozowski violated the Workplace Violence Policy by "using threatening

gestures and facial grimaces that intimidated another employee at the [Commission]."[60]

### *Mr. Brzozowski's discrimination charge and lawsuit.*

In June 2014, Mr. Brzozowski filed an EEOC Charge of Discrimination against the

Commission, swearing:

> On May 5, 2003, [the Commission] hired me as a Toll Collector. On April 17, 2012, [the Commission] promoted me into the position of Executive Assistant. I was discharged on December 12, 2013.
>
> On or about October 2013, I discovered that Alice Sebring (Female, Legal Assistant) and Anna Marcella (Female, Legal Secretary) were hired for their respective positions. I was never given the chance to apply to either position because they were not posted. Ms. Sebring and Ms. Marcella were both hired as external candidates. I also applied for Executive Assistant Information Technology on September 26, 2013, and was not selected for that position either. On December 12, 2013, I was suspended and later discharged after I was falsely accused of workplace violence by Dorothy Ross (Human Resources Specialist, Female). Ms. Ross also stated that I threw the manual across the table when I was told I could not use it.
>
> I believe [the Commission] discriminated against me based on my age (58) and retaliation in violation of Age Discrimination in Employment Act, sex (male), national origin (Polish) and in retaliation in violation of Title VII[.][61]

The EEOC responded in January 2015 after reviewing Mr. Brzozowski's charge:

> You were hired in 5/03 as a Supplemental Toll Collector, and in 2012 applied for, and were promoted to, Executive Assistant. Regarding the positions of Legal Assistant and Legal Secretary which you could not apply for, the record indicates that both positions were classified as "confidential," and so were not posted internally in accordance with policy.
>
> The evidence indicates that on 12-12-13, your employment was terminated for violations of policy, following an internal investigation. On 12-11-13, the Training and Development Specialist was administering exercises for your interview for a position. She informed you that you were not to use the Excel Manual as a cross reference, at which time she observed that you whipped the manual across the table

6

and gave her what she considered to be a terrible glare, to the point she was very frightened. This was reported to [the Commission], and an investigation was conducted. The investigation also revealed that you had violated the Electronic Communications Policy regarding computer usage. Accordingly, your employment was terminated for policy violations.[62]

Mr. Brzozowski sued on April 27, 2015. Judge Stengel dismissed his complaint without prejudice to file an amended complaint.  Mr. Brzozowski appealed Judge Stengel's dismissal and also filed his Amended Complaint on March 30, 2016.[63] Defendants moved to dismiss the Amended Complaint on April 20, 2016.[64] Mr. Brzozowski moved to stay the case on June 8, 2016 to allow our Court of Appeals to rule on his pending appeal of the dismissal of his original complaint.[65]   Judge Stengel denied Mr. Brzozowski's motion to stay and ordered him to respond to the motion to dismiss the Amended Complaint by July 26, 2016.[66] Mr. Brzozowski did not respond. Judge Stengel dismissed the Amended Complaint on August 24, 2016 for Mr. Brzozowski's failure to comply with his Order requiring filing of a response to the motion to dismiss.[67] Mr. Brzozowski appealed this dismissal as well.  On June 20, 2018, our court of appeals vacated the August 24, 2016 dismissal Order and remanded the case for further proceedings as to the Amended Complaint.[68] On September 18, 2018, the Chief Judge reassigned this case, and Mr. Brzozowski answered the motion to dismiss on November 20, 2018.[69]

## II.    Analysis[70]

Mr. Brzozowski alleges the Commission and individual Commission Defendants are liable for: (1) First Amendment retaliation; (2) violation of Pennsylvania's Whistleblower Law; (3) violations of the Fair Labor Standards Act, the Fair Pay Act, and the Equal Pay Act, and state law claims for unjust enrichment and quantum meruit stemming from his promotion to Executive Assistant; (4) national origin and sex discrimination under Title VII and the Pennsylvania Human Relations Act; (5) age discrimination under the Age Discrimination in Employment Act; and, (6)

termination without due process.  Mr. Brzozowski does not allege claims against the police officer

Defendants.[71]

Defendants argue the statute of limitations bars the First Amendment retaliation claims or

alternatively, Mr. Brzozowski fails to state a claim; the statute of limitations bars Mr. Brzozowski's

Pennsylvania whistleblower claim; and Mr. Brzozowski fails to state a claim as to any other theory.

The individual Commission Defendants separately argue because Judge Stengel dismissed with

prejudice Mr. Brzozowski's discrimination claims against them, we should dismiss those same

discrimination claims repeated in the Amended Complaint against them.  We agree with

Defendants.

### A.  We dismiss Mr. Brzozowski's claims under Title VII, the Pennsylvania Human Rights, and the Age Discrimination in Employment Act against the individual Commission Defendants.

Mr. Brzozowski initially alleged discrimination against the Commission and the individual

Commission Defendants under Title VII, the Pennsylvania Human Rights Act, and the Age

Discrimination in Employment Act. Judge Stengel this initial complaint against the individual

Commission Defendants with prejudice.[72]  Judge Stengel permitted Mr. Brzozowski to amend his

complaint against the Commission only.[73]  Our court of appeals affirmed the dismissal of his

complaint against the individual Commission Defendants with prejudice.[74]

Disregarding this Court's dismissal of claims with prejudice, as affirmed on appeal, Mr.

Brzozowski re-plead his discrimination claims against the Commission and the individual

Commission Defendants in his Amended Complaint while adding new claims under the First

Amendment, state law, various federal labor and fair pay laws, and the due process clause.  Mr.

Brzozowski may not re-plead claims against the individual Commission Defendants in his

Amended Complaint after Judge Stengel dismissed these claims with prejudice.[75]

We dismiss the Title VII, Pennsylvania Human Rights Act, and Age Discrimination in Employment Act claims against the individual Commission Defendants. We analyze Mr. Brzozowski's discrimination claims against the Commission only. We analyze his new claims under the First Amendment, state law, various labor and fair pay laws, and the due process clause against the Commission and the individual Commission Defendants.

**B. Mr. Brzozowski fails to state a claim for First Amendment retaliation.**

Mr. Brzozowski alleges under the First Amendment: (1) Ms. Treaster retaliated against him for refusing to sign secondary employment documents, (2) the Commission retaliated against him for his affiliation with the Democratic Party, (3) Commissioners Lieberman, Pratt, Deon, Logan, and Schoch retaliated against him for criticizing Republican privatization ventures, (4) the Commission retaliated against him for assisting minorities in the Office of Diversity and Inclusion, and (5) Mses. Schlegel and Ross retaliated against him for his political party affiliation. We address each claim in turn.

### 1. The statute of limitations bars Mr. Brzozowski's claim against Ms. Treaster for retaliation for refusing to sign secondary employment documents.

Mr. Brzozowski alleges Mr. Gillen "stated that unless [Mr. Brzozowski] sign a secondary employment document declaring the income procured as a notary public, that he would be taken off the payroll and faced termination."[76] Mr. Brzozowski alleges he has a "First Amendment right not to sign documents [he does] not agree with and to exercise and enjoy [his] right to refuse without retaliation."[77] Mr. Brzozowski sues Ms. Treaster alleging she "was Mr. Gillen's superior at Human Resources Department."[78] We construe Mr. Brzozowski's claim as one for First Amendment retaliation. Ms. Treaster argues the statute of limitations bars the claim or alternatively, Mr. Brzozowski fails to state a claim.[79]

Mr. Brzozowski brings his First Amendment retaliation claims under § 1983. We apply Pennsylvania's two-year statute of limitation for personal injury actions to his § 1983 claims.[80] The events giving rise to Mr. Brzozowski's claim occurred in 2011. On January 15, 2011, Mr. Gillen threatened to retaliate against Mr. Brzozowski unless he signed the secondary employment documents. Mr. Brzozowski signed the secondary employment documents on January 27, 2011. On February 17, 2011, Mr. Duckett terminated the disciplinary action against Mr. Brzozowski because he signed the documents. Mr. Brzozowski could bring his First Amendment retaliation claim by February 17, 2013. Mr. Brzozowski sued on April 27, 2015. He claimed First Amendment retaliation for the first time in his Amended Complaint on March 30, 2016. Mr. Brzozowski's claim is untimely. Mr. Brzozowski does not argue, and we cannot separately find, a basis for tolling the two-year statute of limitations.

We dismiss Mr. Brzozowski's First Amendment retaliation claim against Ms. Treaster for refusing to sign secondary employment documents.

### 2. The statute of limitations bars Mr. Brzozowski's claim against the Commission for retaliation based on his political affiliation.

Mr. Brzozowski alleges the Commission violated his First Amendment right to free speech and free expression when it "refused to allow [toll] collectors to know their total amount collected at the end of the shifts" due to "[Mr. Brzozowski's] association with the Democratic Party and elected officials."[81] The Commission argues the statute of limitations bars the claim. We liberally read Mr. Brzozowski's claim as one for First Amendment retaliation for his political party affiliation.[82]

We apply Pennsylvania's two-year statute of limitations for personal injury actions to Mr. Brzozowski's § 1983 claim.[83] The Commission promoted Mr. Brzozowski to Executive Assistant in the Office of Diversity and Inclusion on April 17, 2012, at which point he left his toll collector

position.[84] Since his claim stems from work as a toll collector, Mr. Brzozowski had until April 17,

2014 at the latest to bring his First Amendment retaliation claim for political party affiliation. Mr.

Brzozowski sued on April 27, 2015. Mr. Brzozowski first claimed First Amendment retaliation in

his Amended Complaint on March 30, 2016. The statute of limitations bars this claim.   Mr.

Brzozowski does not argue for tolling and we cannot find a basis to toll the statute of limitations.

We dismiss Mr. Brzozowski's claim for First Amendment political party affiliation

retaliation.

### 3. The statute of limitations bars Mr. Brzozowski's claim against the Turnpike Commissioners for retaliation for criticizing Republican privatization ventures.

Mr. Brzozowski alleges Turnpike Commissioners Lieberman, Pratt, Deon, Logan, and

Schoch "retaliated against [him] for exercising [his] First Amendment rights to criticize

Republican privatization ventures."[85] Mr. Brzozowski alleges the Turnpike Commissioners

terminated him in December 2013 because he published an op-ed in March 2011 "criticizing newly

elected Governor Corbett and his Republican supporters for trying to privatize the PA Liquor

Stores, the PA Lottery and the turnpike."[86] The Commissioners argue the statute of limitations bars

the claim for criticizing Republican privatization ventures.

We apply Pennsylvania's two-year statute of limitations for personal injury actions to his

§ 1983 claim.[87] The Commission terminated Mr. Brzozowski on December 26, 2013. Mr.

Brzozowski had to sue for political affiliation retaliation claim by December 26, 2015.

While Mr. Brzozowski filed his initial complaint on April 27, 2015, he did not allege First

Amendment retaliation until pleading new facts and events in his March 30, 2016 Amended

Complaint. Mr. Brzozowski failed to allege facts concerning his political party affiliation or the

op-ed until his Amended Complaint.[88] The statute of limitations will not bar Mr. Brzozowski's

First Amendment retaliation claim if it "relates back" to his initial complaint under Federal Rule of Civil Procedure 15.

Mr. Brzozowski's First Amendment claim in his March 30, 2016 Amended Complaint does not "relate back" to his April 27, 2015 initial complaint for statute of limitations purposes. Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to the pleading relates back to the date of the original pleading for statute of limitations purposes when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[89] Our court of appeals instructs an amended claim does not relate back when the original pleading fails to give "fair notice of what the plaintiff's [amended] claim is and the grounds upon which it rests."[90]

In *Glover*, the plaintiff sued several banks and a debt collector for violating the Fair Debt Collections Practices Act. The plaintiff later amended the complaint to add a claim against the debt collector under a different provision of the Act and relying on new facts. Our court of appeals explained the amended claim did not relate back for statute of limitations purposes because it did not arise from the "factual occurrences" upon which the plaintiff based the original claim against the debt collector.[91] While the original complaint and the amended claim had "overlapping facts," our court of appeals explained the original complaint failed to give the debt collector notice of the "general fact situation" and the "legal theory" on which the plaintiff relied in the amended claim.[92]

We find Mr. Brzozowski's original complaint fails to give the Turnpike Commissioners fair notice of the new claim. Mr. Brzozowski alleges for the first time in his Amended Complaint he wrote an op-ed criticizing Republican privatization ventures. He failed to allege facts concerning his political party affiliation until his Amended Complaint. Mr. Brzozowski bases a completely new legal theory of First Amendment retaliation on new facts in his Amended

Complaint. Mr. Brzozowski failed to give notice in his original complaint of the fact situation and the legal theory relied on in his new First Amendment claim. Mr. Brzozowski's First Amendment retaliation claim does not relate back to the original complaint for statute of limitations purposes.

The statute of limitations bars Mr. Brzozowski's First Amendment retaliation claims against the Turnpike Commissioners for criticizing Republican privatization ventures. Mr. Brzozowski does not argue for tolling and we cannot find a basis to toll the statute of limitations. We dismiss Mr. Brzozowski's claim against the Turnpike Commissioners for retaliation for criticizing Republican privatization ventures.

### 4. Mr. Brzozowski fails to state a claim for First Amendment retaliation for assisting minorities in the Office of Diversity and Inclusion.

Mr. Brzozowski alleges "Defendants . . . retaliated against [him] for exercising [his] First Amendment rights assist[ing] minorities in the Office of Diversity & Inclusion."[93] He alleges he "protested" when prime contractors chosen for Commission contracts rarely "met the 10% [quota for Disadvantaged Business Enterprises], even though the second or third ranked prime contractor occasionally did meet the 10% criteria."[94] Defendants argue Mr. Brzozowski fails to state a claim.

Under § 1983, Mr. Brzozowski must plead (1) a violation of a right protected by the Constitution or laws of the United States and (2) a person acting under the color of state law committed the violation.[95] Mr. Brzozowski must allege personal involvement in the constitutional violation; Mr. Brzozowski cannot allege liability based on *respondeat superior*.[96] To state a claim against an agency, Mr. Brzozowski must allege a policy or custom causing the constitutional violation.[97]

To state a First Amendment retaliation claim, Mr. Brzozowski must allege "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."[98]

13

While Mr. Brzozowski alleges he "protested" when prime contractors chosen for projects did not meet the 10% DBE quota and was "wrongfully terminated" as a result, he fails to allege facts showing his "protest" was a substantial factor in his termination. Mr. Brzozowski does not allege to whom he protested, let alone whether anyone heard his protests. He alleges no facts showing personal involvement in the deprivation of rights. Mr. Brzozowski fails to allege the Commission implemented a policy or custom causing the deprivation.

In his response to the motion to dismiss, Mr. Brzozowski alleges he reported objections "to his supervisor who was overruled by attorneys in the law department."[99] We cannot consider new facts alleged for the first time in a response to a motion to dismiss.[100] Even considering the new allegation, Mr. Brzozowski fails to identify these actors. Mr. Brzozowski fails to state a claim for First Amendment retaliation for assisting minorities in the Office of Diversity and Inclusion. We allow Mr. Brzozowski one last leave to timely amend his complaint to attempt to plead this claim consistent with Federal Rule of Civil Procedure 11.

### 5. Mr. Brzozowski fails to state a claim against Mses. Schlegel and Ross for retaliation for preventing him from interviewing for the IT Department.

Mr. Brzozowski alleges Mses. Schlegel and Ross "arranged scheduling, conspired and ensured that someone else other than Mr. Brzozowski would get the [IT Department] position."[101] He alleges the position "was not a policy making position and did not require political affiliation."[102] He alleges because of Mses. Schlegel and Ross's conduct, he "was retaliated against politically and fired before being able to interview for the IT Department."[103] Mses. Schlegel and Ross argue Mr. Brzozowski fails to state a claim.

Mr. Brzozowski alleges First Amendment retaliation for political party affiliation. To state a claim, Mr. Brzozowski must allege "(1) that [he] was employed at a public agency in a position that does not require political affiliation; (2) that [he] engaged in First Amendment protected

conduct; and (3) that [his] constitutionally-protected conduct was a substantial or motivating factor for an adverse employment action."[104]

While he alleges the Commission employed him and did not require a political affiliation for the IT Department job, Mr. Brzozowski fails to allege facts showing his political party affiliation was a substantial or motivating factor in denial of an interview. Mr. Brzozowski fails to allege Ms. Schlegel and Ms. Ross knew his political affiliation. Besides the conclusion he "was retaliated against politically," Mr. Brzozowski fails to allege facts from which we can infer Mses. Schlegel and Ross retaliated against him because of his political affiliation. We dismiss Mr. Brzozowski's claim for First Amendment retaliation against Mses. Schlegel and Ross but allow him one last leave to timely amend his complaint to attempt to plead this claim consistent with Federal Rule of Civil Procedure 11.

We dismiss Mr. Brzozowski's First Amendment retaliation claims for (1) refusing to sign secondary employment documents, (2) his political affiliation with the Democratic Party, (3) criticizing Republican privatization ventures, and (4) assisting minorities in the Office of Diversity and Inclusion, and (5) preventing him from interviewing for an IT position.

We grant Mr. Brzozowski one last leave to amend his retaliation claims against (1) the Commission for assisting minorities and (2) Mses. Schlegel and Ross for preventing him from interviewing for an IT position.

### C. Mr. Brzozowski's whistleblower claim is untimely.

Mr. Brzozowski claims the Commission violated the Pennsylvania Whistleblower Law.[105] Mr. Brzozowski alleges his "firing was in retaliation for his objections to the prime contractors receiving contracts without attain[ing] the 10% DBE quotas."[106] The Commission argues the statute of limitations bars the claim.

15

"[N]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . [who] makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act."[107] "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation."[108]

Mr. Brzozowski alleges he protested about the DBE quotas "on and before December 11, 2013."[109] The Commission terminated Mr. Brzozowski on December 26, 2013.[110] Mr. Brzozowski had until June 24, 2014 to bring this claim. Mr. Brzozowski sued on April 27, 2015. Mr. Brzozowski's claim is untimely. Mr. Brzozowski does not argue for tolling and we cannot find a basis to toll the statute of limitations. We dismiss Mr. Brzozowski's whistleblower claim.

### D. Mr. Brzozowski fails to state a claim against the Commission under the Fair Labor Standards Act, the Equal Pay Act, or the Fair Pay Act, or for unjust enrichment or quantum meruit.

Mr. Brzozowski alleges the Commission violated the Fair Labor Standards Act, the Equal Pay Act, and the Fair Pay Act stemming from his promotion to Executive Assistant. Mr. Brzozowski also asserts state law claims for unjust enrichment and quantum meruit. Mr. Brzozowski claims "[a]bout the time [he] was tested for Executive Assistant, [he] was interviewed but not hired for Interchange Manager."[111] He further alleges around the same time, "Mike Mierzejewski, Eric Paul, and Dennis McClennan were promoted to [Interchange Manager] for $61K/year."[112] When he was hired as Executive Assistant, "he thought he heard in his phone call that his salary would be $61K/year."[113] He later discovered he "would have to undergo training, and until he was trained he will start at $50K/year."[114] Mr. Brzozowski then "started attending in-house courses to become more qualified and more efficient at his job," to "improve his clerical

16

skills," to "perform his duties at his position," and to prove "he had the background to perform other positions such as Interchange Manager."[115] In 2012, the Office of Diversity and Inclusion's budget was $325,000 for three employees and in 2013, the Office added three employees and its budget increased to $400,000.[116] Mr. Brzozowski bases his Fair Labor Standards Act, Equal Pay Act, and Fair Pay Act claims, and his state law claims for unjust enrichment and quantum meruit on these allegations. We address each in turn.

### 1. Mr. Brzozowski fails to state a claim under the Fair Labor Standards Act.

Mr. Brzozowski fails to allege which portion of the Fair Labor Standards Act we should review. He does not allege the Commission failed to pay him overtime wages or minimum wage. He does not allege the Commission retaliated against him because he engaged in activity protected under the Act. We have no basis to allow a Fair Labor Standards Act claim to proceed. We dismiss Mr. Brzozowski's claim under the Fair Labor Standards Act but grant him leave to timely amend his complaint to attempt to plead this claim consistent with Federal Rule of Civil Procedure 11.

### 2. Mr. Brzozowski fails to state a claim under the Equal Pay Act.

Mr. Brzozowski alleges the Commission violated the Equal Pay Act. The Commission argues Mr. Brzozowski fails to state a claim.

Congress prohibits employers from "discriminat[ing] between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[117] To state a claim, Mr. Brzozowski must allege "employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions."[118]

17

Mr. Brzozowski fails to state a claim under the Equal Pay Act. Mr. Brzozowski fails to allege the Commission paid employees of the opposite sex differently. Mr. Brzozowski also fails to allege he performed work equal to the Interchanger Managers' work. In his response to the motion to dismiss, Mr. Brzozowski alleges he "got paid lower than other female executive assistants with less time."[119] We cannot consider new facts alleged for the first time in a response.[120] Even if we consider this allegation, courts have held such bare pleading insufficient to state a claim.[121] We dismiss Mr. Brzozowski's Equal Pay Act claim with leave to amend if he can do so consistent with Federal Rule of Civil Procedure 11.

### 3. Mr. Brzozowski fails to state a claim under the Fair Pay Act.

Mr. Brzozowski claims the Commission violated the Fair Pay Act. The Commission argues Mr. Brzozowski fails to state a claim under the Act.

Under Title VII, Congress prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[122] With the Fair Pay Act, Congress added:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.[123]

Congress enacted the Fair Pay Act to "reinstate the law regarding the timeliness of pay compensation claims" to allow the statute of limitations to accrue with "each paycheck that stems from a discriminatory compensation decision or pay structure."[124] The Fair Pay Act does not apply

when the plaintiff has not alleged wage discrimination.[125] Our court of appeals decided "the [Fair Pay Act] does not apply to failure-to-promote claims."[126]

Mr. Brzozowski's Fair Pay Act claim fails because he fails to allege wage discrimination. Mr. Brzozowski compares his salary to three other male employees promoted to a different position. While Mr. Brzozowski alleges his national origin, he fails to these employees' national origins. Assuming Mr. Brzozowski alleges failure to promote, he cannot bring such claim under the Fair Pay Act.[127] We dismiss Mr. Brzozowski's Fair Pay Act claim with leave to amend if he can do so consistent with Federal Rule of Civil Procedure 11.

### 4. Mr. Brzozowski fails to state a claim for unjust enrichment or quantum meruit.

Mr. Brzozowski alleges unjust enrichment against the Commission for "keeping [him] at a low salary."[128] Mr. Brzozowski also alleges quantum meruit "where the firing prohibited [him] from recouping the pay increases expected after taking training courses."[129] The Commission argues the statute of limitations bars these claims or alternatively, Mr. Brzozowski fails to state a claim.

The statute of limitations for unjust enrichment and quantum meruit claims under Pennsylvania law is four years.[130] Mr. Brzozowski claims he unjustly enriched the Commission by his work after it terminated him in December 2013 before he received a pay increase. Mr. Brzozowski first alleged unjust enrichment in his Amended Complaint on March 30, 2016. The statute of limitations does not bar these claims.

Under Pennsylvania law, Mr. Brzozowski must allege the same elements for quantum meruit and unjust enrichment.[131] Mr. Brzozowski must allege (1) he conferred benefits on the Commission, (2) the Commission appreciated the benefits, (2) the Commission accepted and retained the benefits "under such circumstances that it would be inequitable for defendant to retain

19

the benefit without payment of value."[132] Mr. Brzozowski "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."[133]

As for Mr. Brzozowski and any other employee, an employee must allege he did "more than work to the best of his abilities for defendant as he was engaged to do."[134]

Mr. Brzozowski fails to state a claim for either unjust enrichment or quantum meruit. He claims because the Commission fired him before he completed training, the Commission denied him the pay increase he expected after completion. He acknowledges he took in-house courses to become "more efficient at his job" and to "perform his duties at his position."[135] Mr. Brzozowski essentially asserts he improved his own job skills, so he could "work to the best of his abilities." Mr. Brzozowski does not allege he paid for the in-house courses or the Commission failed to compensate him for time spent taking the courses.

We see no facts from which we can infer Mr. Brzozowski conferred benefits on the Commission sufficient to state a claim for unjust enrichment or quantum meruit. We dismiss Mr. Brzozowski's claims for unjust enrichment and quantum meruit with leave to amend if he can do so consistent with Federal Rule of Civil Procedure 11.

### E.  Mr. Brzozowski fails to state a claim against the Commission under Title VII, the Pennsylvania Human Rights Act, or the Age Discrimination in Employment Act.

Mr. Brzozowski alleges the Commission discriminated against him based on his national origin, sex, and age. The Commission argues Mr. Brzozowski fails to state a claim. We agree with the Commission.

### 1. Mr. Brzozowski fails to state a claim for national origin discrimination under Title VII or the Pennsylvania Human Rights Act.[136]

Mr. Brzozowski alleges national origin discrimination in his termination and possibly—under a most liberal interpretation—a hostile work environment. He alleges on December 11, 2013, Ms. Ross "verbally threatened both [Mr. Brzozowski and Ms. Ojo] in Italian, a discriminatory act derogatory to Mr. Brzozowski of Polish Descent and an act of national origin discrimination."[137] He further alleges as a "result of Defendants' conduct . . . [Mr. Brzozowski] was wrongfully terminated."[138] The Commission argues Mr. Brzozowski fails to state a claim for wrongful termination and cannot plead a hostile work environment claim alleging a single instance of discrimination. Mr. Brzozowski also fails to plead his national origin as either Poland or the United States or how a person speaking Italian in his presence is discrimination.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[139] To state a claim for hostile work environment, Mr. Brzozowski must allege: (1) he suffered intentional discrimination because of his national origin; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same national origin; and (5) the existence of respondeat superior liability.[140] A single isolated incident, unless extremely serious, is not sufficient to sustain a hostile work environment claim.[141]

We fail to see how an employee's single threat in Italian constitutes discrimination against Mr. Brzozowski based on his Polish heritage but allegedly American national origin. As Mr. Brzozowski fails to allege what Ms. Ross said, we cannot determine the severity of the statement or whether Mr. Brzozowski suffered intentional discrimination because of his Polish heritage. Mr.

Brzozowski also fails to allege the discrimination detrimentally affected him and the discrimination would detrimentally affect a reasonable person of Polish origin.

In his response to the motion to dismiss, Mr. Brzozowski argues the Commission subjected him to more than one instance of discrimination, including Mr. Gillen forcing him to fill out the secondary employment application and Ms. Ross's complaint Mr. Brzozowski made disparaging comments to a black co-worker.[142] But these facts do not show discrimination based on Mr. Brzozowski's Polish heritage.

Mr. Brzozowski alleges as a "result of Defendants' conduct . . . [Mr. Brzozowski] was wrongfully terminated."[143] To the extent Mr. Brzozowski claims wrongful termination under Title VII, he must allege: "(1) [he] is a member of a protected class; (2) [he] is qualified for her position; (3) an adverse employment action was taken against [him]; and (4) that employer treated similarly situated persons from a different class more favorably, raising an inference of discrimination."[144]

Mr. Brzozowski fails to raise an inference of discrimination. While he alleges his national origin, he fails to allege the Commission treated similarly situated employees from a different class more favorably. We dismiss Mr. Brzozowski's national origin discrimination claims for wrongful termination and hostile work environment without prejudice to allow him to timely plead facts under Federal Rule of Civil Procedure 11.

### 2. Mr. Brzozowski fails to state a claim for sex discrimination under Title VII or the Pennsylvania Human Rights Act.[145]

Mr. Brzozowski alleges the Commission discriminated against him based upon his sex. He claims he "applied for positions that are historically held by women and he was discriminated for his sex."[146] Mr. Brzozowski alleges no other facts supporting a claim for sex discrimination. The Commission argues Mr. Brzozowski fails to state a claim.

Mr. Brzozowski refers to a claim for "reverse discrimination."[147] To state a claim, Mr. Brzozowski must allege (1) "[he] was qualified for the position in question, (2) [he] suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII."[148]

Mr. Brzozowski fails to allege facts from which we can infer sex discrimination. He attaches his EEOC Charge of Discrimination:

> On or about October 2013, I discovered that Alice Sebring (Female, Legal Assistant) and Anna Marcella (Female, Legal Secretary) were hired for their respective positions. I was never given the chance to apply to either position because they were not posted. Ms. Sebring and Ms. Marcella were both hired as external candidates. I also applied for Executive Assistant Information Technology on September 26, 2013, and was not selected for that position either.[149]

Mr. Brzozowski also attaches the EEOC's response:

> You were hired in 5/03 as a Supplemental Toll Collector, and in 2012 applied for, and were promoted to, Executive Assistant. Regarding the positions of Legal Assistant and Legal Secretary which you could not apply for, the record indicates that both positions were classified as "confidential," and so were not posted internally in accordance with policy.[150]

Mr. Brzozowski fails to state a claim for sex discrimination. Mr. Brzozowski merely concludes the Commission discriminated against him. As Judge Stengel noted, the EEOC letter undermines Mr. Brzozowski's claim, as the EEOC concluded Mr. Brzozowski could not apply for the Legal Secretary and Legal Assistant positions because the Commission posted the positions for external candidates under a Commission policy. The Commission treated all employees, men and women, the same by posting the job only for non-employees. We dismiss Mr. Brzozowski's claims for sex discrimination with leave to amend if he can do so consistent with Federal Rule of Civil Procedure 11.[151]

### 3. Mr. Brzozowski fails to state a claim for age discrimination.

Mr. Brzozowski claims the Commission discriminated against him because of his age. Mr. Brzozowski generally alleges he is "a member of protective class at 58 years old under ADEA."[152] Mr. Brzozowski also alleges "at the time of his latest employment [he] was 58 years old and was subjected to age discrimination."[153] The Commission argues Mr. Brzozowski fails to state a claim.

An employer cannot "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[154] To state a claim for age discrimination, Mr. Brzozowski must allege: "(1) he is older than 40; (2) he applied for and was qualified for the position; (3) he suffered an adverse [employment] action; and (4) he was replaced by a sufficiently younger person to support the inference of age discrimination."[155]

Mr. Brzozowski pleads no facts giving rise to an inference of age discrimination. While Mr. Brzozowski alleges adverse employment actions including a failure to promote and his termination, he fails to allege the Commission replaced him with a younger person. Mr. Brzozowski concludes he was "subjected to age discrimination," but he cannot state a claim with a mere conclusion.[156]

In his response to the motion, Mr. Brzozowski argues he "was discriminated against by the hiring of many younger employees in the Human Relations Department."[157] We cannot consider new facts presented for the first time in response.[158] Even considering this argument, Mr. Brzozowski fails to allege the positions, whether he applied for these positions, his age when he applied, and the ages of the employees hired and their positions. Mr. Brzozowski's general conclusion does not suffice. We grant the Commission's motion to dismiss Mr. Brzozowski's

claim for age discrimination with leave to amend if he can do so consistent with Federal Rule of Civil Procedure 11.

**F. Mr. Brzozowski fails to state a due process claim.**

Mr. Brzozowski alleges Ms. Schlegel deprived him of due process. Mr. Brzozowski alleges "[i]n a letter dated December 26, 2013, Patricia F. Schlegel, Director of Human Resources, without evidence and proper due process Constitutional rights terminated [him] for misconduct."[159] Ms. Schlegel argues Mr. Brzozowski had no property interest in his employment.

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law."[160] To state a claim for deprivation of procedural due process, Mr. Brzozowski must allege "(1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[161]

Procedural due process applies "only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[162] State law determines whether Mr. Brzozowski has a property interest in his employment.[163] "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment."[164]

Under Pennsylvania law, Mr. Brzozowski can claim a property interest in his employment under a statute or contract.[165] A public employee in Pennsylvania is an employee-at-will, in other words, he "serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment."[166]

Mr. Brzozowski fails to allege a property interest in his employment. As a public employee, the Commission could terminate Mr. Brzozowski at will. He fails to allege a statute or a contract

granting him a property interest. Mr. Brzozowski fails to state a claim for deprivation of due process. We dismiss Mr. Brzozowski's due process claim.

**III.   Conclusion**

We grant Defendants' motion to dismiss Mr. Brzozowski's Amended Complaint. We grant the motion of William K. Lieberman, A. Michael Pratt, Pasquale T. Deon, Sr., Sean Logan, Barry J. Schoch, Judy Treaster, Patrick Caro, Jill Davis, David Smith, and Lynn Feeman with prejudice. We grant Defendants' to dismiss without prejudice and grant Mr. Brzozowski leave to timely amend only his: (1) First Amendment retaliation claim against the Commission for assisting minorities; (2) First Amendment retaliation claim against Patricia Schlegel and Dorothy Ross for preventing him from interviewing for the IT position; (3) Fair Labor Standards Act, Equal Pay Act, Fair Pay Act, quantum meruit, and unjust enrichment claims against the Commission; and, (4) national origin, sex, and age discrimination claims against Commission.

We dismiss claims against the Pennsylvania State Police, Corporal Kernaghan, and Governor Corbett without prejudice. As our court of appeals found, Mr. Brzozowski's claims against these parties will not accrue unless and until his underlying traffic conviction is invalidated.

---

[1] William K. Lieberman, A. Michael Pratt, Pasquale T. Deon, Sean Logan, Barry J. Schoch, Patricia Schlegel, Judy Treaster, Dorothy Ross, Patrick Caro, Jill Davis, David Smith, Lynn Feeman (the individual Commission Defendants);  Although not directly affiliated with the Commission, the *pro se* Plaintiff also names Thomas W. Corbett, "Troop T" of the Pennsylvania State Police, and Cpl. Shawn Kernaghan (the police defendants).

[2] While Mr. Brzozowski alleges a rambling disjointed history of complaints regarding his employment with the Pennsylvania Turnpike Commission and its political views and practices in the amended complaint, his remaining claims arise from a relatively limited number of plead facts.

[3] ECF Doc. No. 38 at ¶ 36.  Due to review in our court of appeals, we are today reviewing facts plead as of a March 30, 2016 Amended Complaint.  We are not aware of Mr. Brzozowski's present affiliations.

[4] *Id.*

[5] *Id.* at ¶ 79.

[6] *Id.* at ¶¶ 42, 44.

[7] *Id.* at ¶ 58.

[8] *Id.*

[9] *Id.* at ¶ 56.

[10] *Id.* at ¶ 59.

[11] *Id.* at ¶ 60.

[12] *Id.* at ¶ 63.

[13] *Id.* at ¶ 64. Mr. Brzozowski did not name Mr. Gillen as a defendant.

[14] *Id.* at ¶ 65.

[15] *Id.* at Ex. AM-34.

[16] *Id.* at ¶¶ 66-67.

[17] *Id.* at ¶ 67.

[18] *Id.* at ¶ 68.

[19] *Id.* at ¶ 70; Ex. AM-37.

[20] *Id.* at ¶ 69.

[21] *Id.* at ¶ 71.

[22] *Id.* at ¶ 75.

[23] *Id.*

[24] *Id.* at ¶¶ 77, 85.

[25] *Id.* at ¶ 101.

[26] *Id.* at ¶ 102.

[27] *Id.* at ¶ 103.

[28] *Id.* at ¶ 104.

[29] *Id.* at ¶ 87.

[30] *Id.* at ¶ 88.

[31] *Id.* at ¶ 89.

[32] *Id.* at ¶ 107.

[33] *Id.* at ¶¶ 105-06.

[34] *Id.* at ¶ 125.

[35] *Id.* at ¶ 126.

[36] *Id.* at ¶ 110.

[37] *Id.*

[38] *Id.* at ¶ 111.

[39] *Id.* at ¶ 112.

[40] *Id.* at ¶ 127.

[41] *Id.* at ¶ 128.

[42] *Id.* at ¶ 129.

[43] *Id.* at ¶ 130.

[44] *Id.* at ¶ 131.

[45] *Id.*

[46] *Id.* at ¶ 135.

[47] *Id.* at Ex. AM-25.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at ¶ 135.

[52] *Id.* at ¶¶ 132, 137.

[53] *Id.* at ¶ 137.

[54] *Id.* at ¶ 134.

[55] *Id.* at ¶ 136.

[56] *Id.*

[57] *Id.* at ¶ 5.

[58] *Id.* at Ex. AM-28.

[59] *Id.*

[60] *Id.*

[61] *Id.* at Ex. AM-7.

[62] *Id.* at Ex. AM-2.

[63] ECF Doc. No. 38.

[64] ECF Doc. No. 41.

[65] ECF Doc. No. 42.

[66] ECF Doc. No. 43.

[67] ECF Doc. No. 44.

[68] *Brzozowski v. Pennsylvania Tpk. Comm'n*, No. 16-3706, 2018 WL 3057002, at *4 (3d Cir. June 20, 2018).

[69] ECF Doc. Nos. 56, 65.

[70] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[71] Mr. Brzozowski did not sue Pennsylvania State Police Troop, Corporal Kernaghan, and Governor Corbett in his Amended Complaint. Mr. Brzozowski failed to remove these defendants from his April 27, 2015 initial complaint, which contained allegations of police misconduct against these three defendants (the police misconduct defendants). On February 25, 2016, Judge Stengel dismissed claims against the Pennsylvania State Police, Corporal Kernaghan, and Governor Corbett with prejudice. ECF Doc. No. 34 at p. 24. Our court of appeals affirmed, while modifying the judgment as a dismissal without prejudice. *Brzozowski v. Pennsylvania Comm'n*, No. 16-3706, 2018 WL 3057002 (3d Cir. June 20, 2018). Our court of appeals recognized Mr. Brzozowski's claims against the Pennsylvania State Police, Corporal Kernaghan, and Governor Corbett have not yet accrued and will not accrue unless his conviction is invalidated. *Id.* In his Amended Complaint, Mr. Brzozowski fails to allege facts which may allow us to find these claims have accrued. We dismiss the Pennsylvania State Police, Corporal Kernaghan, and Governor Corbett from the case without prejudice. Mr. Brzozowski may bring these claims if and when they accrue.

[72] ECF Doc. No. 34 at p. 24 (memorandum); ECF Doc. No. 35 ¶ 3 (order).

[73] ECF Doc. No. 34 at p. 24; ECF Doc. No. 35 at p. 1.

[74] *Brzozowski*, 2018 WL 3057002, at *2 (modifying the dismissal of the initial complaint against the police misconduct defendants to reflect "they are dismissed without prejudice" and "otherwise affirm[ing] the District Court's dismissal of Brzozowski's initial complaint," noting "Mr. Brzozowski failed to allege facts raising a plausible inference of discrimination").

[75] *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *Davis v. Williamson*, No. 08-2009, 2009 WL 136815, at *5 (M.D. Pa. Jan. 20, 2009) (dismissing amended complaint after the plaintiff re-plead claims from his initial complaint the court dismissed with prejudice).

[76] ECF Doc. No. 38 ¶ 67. We note Mr. Brzozowski did not name Mr. Gillen as a defendant.

[77] *Id.* at ¶ 74.

[78] *Id.* at ¶ 72.

[79] *Douglas v. Joseph*, 656 F. App'x 602, 605 (3d Cir. 2016) ("A statute-of-limitations defense may be raised by a Rule 12(b)(6) motion if the limitations bar is apparent on the face of the complaint.").

[80] *Roseberry v. City of Philadelphia*, No. 14-2814, 2016 WL 826825, at *7 (E.D. Pa. Mar. 3, 2016), *aff'd*, 716 F. App'x 89 (3d Cir. 2017) (applying Pennsylvania's two-year statute of limitations to the plaintiff's First Amendment retaliation claim).

[81] ECF Doc. No. 38 ¶ 62.

[82] As Mr. Brzozowski proceeds *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

[83] *Roseberry*, 2016 WL 826825, at *7.

[84] ECF Doc. No. 38 ¶ 85.

[85] *Id.* at ¶ 117.

[86] *Id.* at ¶ 75.

[87] *Roseberry*, 2016 WL 826825, at *7.

[89] Fed. R. Civ. P. 15(c)(1)(B).

[90] *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012).

[91] *Id.*

[92] *Id.* at 147.

[93] ECF Doc. No. 38 ¶ 92.

[94] *Id.* at ¶ 128.

[95] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

[96] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)).

[97] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

[98] *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

[99] ECF Doc. No. 65 at p. 9.

---

[100] *Hammond*, 2001 WL 823637, at *2.

[101] ECF Doc. No. 38 ¶ 89.

[102] *Id.* at ¶ 87.

[103] *Id.* at ¶ 90.

[104] *Lozano v. Martinez*, No. 12-4329, 2013 WL 1285416, at *3 (D.N.J. Mar. 26, 2013) (quoting *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. Mar.8, 2013)).

[105] 43 P.S. § 1421.

[106] ECF Doc. No. 38 ¶ 96.

[107] *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 407 (M.D. Pa. 2016) (quoting 43 P.S. § 1423(a)).

[108] 43 P.S. § 1424(a).

[109] ECF Doc. No. 38 ¶ 128.

[110] *Id.* at ¶ 5.

[111] *Id.* at ¶ 101.

[112] *Id.* at ¶ 102.

[113] *Id.* at ¶ 103.

[114] *Id.* at ¶ 104.

[115] *Id.* at ¶¶ 105-06.

[116] *Id.* at ¶¶ 111-12.

[117] 29 U.S.C. § 206(d).

[118] *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (citing 29 U.S.C. § 206(d)).

[119] ECF Doc. No. 65 at p. 11.

[120] *Hammond*, 2001 WL 823637, at *2.

[121] *See, e.g., Gumbs v. Delaware Dep't of Labor*, No. 15-00190, 2015 WL 3793539, at *3 (D. Del. June 17, 2015) (granting motion to dismiss when plaintiff merely alleges "she has performed the

same duties and that her position has required the same skill, effort, and responsibility as her male co-worker while being paid less than him.").

[122] 42 U.S.C. § 2000e-2(a)(1).

[123] *Id.* at § 2000e-5(e)(3)(A).

[124] *Funayama v. Nichia Am. Corp.*, No. 12-5406, 2014 WL 1013484, at *4 (E.D. Pa. Mar. 14, 2014), *aff'd*, 582 F. App'x 100 (3d Cir. 2014) (quoting *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010)).

[125] *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 94 (3d Cir. 2012) ("[T]he Leadbetter Act does not apply, and therefore cannot excuse a time barred claim, when a plaintiff has not alleged wage discrimination.").
[126] *Noel*, 622 F.3d at 273.

[127] *Id.*

[128] ECF Doc. No. 38 ¶ 113.D.

[129] *Id.* at ¶ 113.E.

[130] *Holmes v. Smith*, 94 F. App'x 905, 907 (3d Cir. 2004) (quantum meruit); *Segal v. Zieleniec*, No. 13-7493, 2015 WL 1344769, at *3 (E.D. Pa. Mar. 24, 2015) (unjust enrichment).

[131] *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 440 (E.D. Pa. 2007).

[132] *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 624 (E.D. Pa. 2009) (quoting *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

[133] *Bowden v. DB Schenker*, 693 F. App'x 157, 160 (3d Cir. 2017) (citing *McGoldrick*, 623 F. Supp. 2d at 624) (dismissing at-will employee's claim for unjust enrichment when she received a salary for work performed).

[134] *McGuckin v. Brandywine Realty Tr.*, 185 F. Supp. 3d 600, 607-08 (E.D. Pa. 2016).

[135] ECF Doc. No. 38 ¶ 105-06.

[136] We apply the same analysis for Mr. Brzozowski's Title VII and Pennsylvania law claims. "Claims under the PHRA are interpreted coextensively with Title VII claims." *Clair v. Agusta Aerospace Corp.*, 592 F. Supp. 2d 812, 818 (E.D. Pa. 2009) (quoting *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006)). We apply our holding on national origin discrimination to Mr. Brzozowski's Title VII and Pennsylvania law claims.

[137] ECF Doc. No. 38 ¶ 136.

[138] *Id.* at ¶ 138.

[139] 42 U.S.C. § 2000e-2(a)(1).

[140] *Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008).

[141] *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

[142] ECF Doc. No. 65 at p. 5.

[143] ECF Doc. No. 38 ¶ 138.

[144] *Fortes v. Boyertown Area Sch. Dist.*, No. 12-6063, 2014 WL 3573104, at *8 (E.D. Pa. July 18, 2014) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).

[145] We apply the same analysis for Mr. Brzozowski's Title VII and Pennsylvania law claims. "Claims under the PHRA are interpreted coextensively with Title VII claims." *Clair*, 592 F. Supp. 2d 812, 818 (quoting *Atkinson*, 460 F.3d at 454). We apply our holding on sex discrimination to Mr. Brzozowski's Title VII and Pennsylvania law claims.

[146] ECF Doc. No 38 ¶ 4.d.

[147] *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 517 (E.D. Pa. 2012) (explaining "reverse discrimination" exists when "a non-protected class is the target of the alleged discrimination").

[148] *Id.*

[149] ECF Doc. No 38 at Ex. AM-7.

[150] *Id.* at Ex. AM-2.

[151] Judge Stengel dismissed Mr. Brzozowski's claim for sex discrimination in his initial complaint for failure to state a claim. Mr. Brzozowski alleged the same bare conclusion of sex discrimination and attached the same EEOC charge and response letter. Judge Stengel dismissed the claim stating "Mr. Brzozowski's complaint fails to adequately allege facts that give rise to a reasonable expectation that discovery will reveal evidence of discrimination." ECF Doc. No. 34 at p. 12-13. In affirming dismissal of the initial complaint, our Court of Appeals opined "we agree with the District Court that Brzozowski failed to allege facts raising a plausible inference of discrimination." *Brzozowski*, 2018 WL 3057002, at *6 n.3. Mr. Brzozowski failed to amend his complaint to adequately plead sex discrimination.

[152] ECF Doc. No. 38 ¶ 1.

[153] *Id.* at ¶ 4.b.

[154] 29 U.S.C. § 623(a)(1).

[155] *Sorgini v. Wissahickon Sch. Dist.*, 274 F. Supp. 3d 291, 297 (E.D. Pa. 2017).

[156] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) ("[A]llegations . . . being merely conclusory are not entitled to the presumption of truth.").

[157] ECF Doc. No. 65 at p. 4.

[158] *Hammond*, 2001 WL 823637, at *2.

[159] ECF Doc. No. 38 ¶ 5.

[160] U.S. Const. amend. XIV.

[161] *Swedron v. Baden*, No. 08-1095, 2008 WL 5051399, at *5 (W.D. Pa. Nov. 21, 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)).

[162] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

[163] *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

[164] *Hill*, 455 F.3d at 234.

[165] *Heneghan v. Northampton Cmty. Coll.*, 801 F. Supp. 2d 347, 356 (E.D. Pa. 2011), *aff'd*, 493 F. App'x 257 (3d Cir. 2012).

[166] *Elmore*, 399 F.3d at 282 (citing *Scott v. Philadelphia Parking Auth.*, 166 A.2d 278, 280 (Pa. 1960) ("A public employee takes his job subject to the possibility of summary removal by the employing authority.").