## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FRANK T. BRZOZOWSKI | : CIVIL ACTION |
| | : |
| v. | : NO. 15-2339 |
| | : |
| PENNSYLVANIA TURNPIKE | : |
| COMMISION, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                    **September 6, 2019**

Frank T. Brzozowski is a 63-year-old man who worked for over ten years with the Pennsylvania Turnpike Commission.[1] A long-time toll collector, the Commission promoted him over two women applicants to an Executive Assistant position in its Office of Diversity and Inclusion in April 2012. Well over a year later in Fall 2013, Mr. Brzozowski applied for several other positions, including as an Executive Assistant in the Commission's Information Technology Department. In December 2013, following an investigation into his workplace conduct unrelated to his pending applications for other positions, the Commission fired Mr. Brzozowski from his Executive Assistant position in the Commission's Office of Diversity and Inclusion. In February 2014, a couple months after firing Mr. Brzozowski, the Commission hired a younger woman applicant already working for the Commission as the Executive Assistant of the IT Department.

He now sues the Commission for age and gender discrimination for first firing him after an investigation and then refusing to hire him months after his firing and instead hiring a woman. Following discovery, Mr. Brzozowski fails to meet his *prima facie* proofs for discrimination or adduce genuine issues of material fact demonstrating the Commission's legitimate employment reasons are pretext for discriminatory animus towards him based on his age and gender.

## I.    Undisputed facts.[2]

In May 2003, the Commission hired Mr. Brzozowski as a supplemental toll collector.[3]  A few months later, the Commission moved Mr. Brzozowski to a data assistant specialist job in the network control office.[4]  Mr. Brzozowski worked as a data assistant specialist for about thirty days before moving back to his initial toll collector job for personal reasons.[5]

Around nine years into his tenure as a toll collector, Mr. Brzozowski applied for an Executive Assistant position in the Commission's Office of Diversity and Inclusion in January 2012.[6]  The Commission received eleven applications for the position.[7]  The Commission considered eight applicants "qualified," including Mr. Brzozowski.[8]  In March 2012, a three-person panel, including Director of the Commission's Office of Diversity and Inclusion, Myneca Ojo, interviewed the qualified applicants.[9]  After interviews, Director of Diversity Ojo recommended Mr. Brzozowski and two female applicants for the position.[10]  The Commission offered Mr. Brzozowski the job over the two qualified female applicants; Mr. Brzozowski accepted the job on April 9, 2012.[11]

In Fall 2013, while in the Executive Assistant job, Mr. Brzozowski applied to other Commission positions: Facilities Security Technician, Custodial Supervisor, Human Resources Specialist 1 – Compensation and Leave, Human Resources Specialist 3 – Compensation, and Executive Assistant in the IT Department.[12]  To determine Mr. Brzozowski's fitness for the jobs, the Commission scheduled for Mr. Brzozowski to undergo Microsoft testing and an interview on December 11, 2013.[13]  The Commission assigned Human Resources Testing Administrator, Dorothy Ross, to administer the Microsoft testing.[14]  Administrator Ross had administered tests to Mr. Brzozowski in the past.[15]

To prepare for the training and interview, Mr. Brzozowski stayed overnight at the Commission's Central Administration Building on December 10, 2013.[16]  Lewis Jack, a

2

Maintenance/Repair Manager, saw Mr. Brzozowski sleeping in a cubicle at work around 3:55 AM.[17]  Mr. Jack took a photograph of the incident and sent it to the Commission's Human Resources Department.[18]  The Commission's compliance department showed the photograph to Director of Diversity Ojo.[19]

The morning after sleeping over at work, Mr. Brzozowski sat for the Microsoft Word and Excel qualification test administered by Administrator Ross on December 11, 2013.[20]  Mr. Brzozowski arrived to the test ten minutes late.[21]  He appeared with a pencil, watch, and Microsoft Excel book.[22]  Administrator Ross told Mr. Brzozowski he could not use the Microsoft Excel book during testing.[23]  Then, according to Administrator Ross, Mr. Brzozowski threw the book across the table at her and then behaved in an intimidating manner towards her.[24]

After the Microsoft testing, the Director of Human Resources Patricia Schlegel, a Human Resources Manager Judy Treaster, and Director of Diversity Ojo held a pre-disciplinary meeting to investigate a claim Mr. Brzozowski stayed overnight at work.[25]  At this meeting, Mr. Brzozowski admitted he had stayed overnight to prepare for the interview and training session.[26]  Mr. Brzozowski also admitted he would stay overnight at work during bad weather.[27]  Manager Treaster prepared the materials and conducted the investigation.[28]

The next morning, Administrator Ross emailed Human Resources Director Schlegel describing the Microsoft training incident with Mr. Brzozowski:

> On 12/11/13, I was administering Frank Brzozowski's exercises for his HR Specialist 1 interview.  He made me feel very uncomfortable and scared regarding the following:
>
> • He was 10 minutes late
>
> • In his possession he had a stop watch, cell phone, and an Excel Manual

3

•    I told him that I was timing him with a stop watch, and he said, "I don't care. I need to compare your time with my time." I did not respond.

•    When I returned to set him up for the third exercise, I stood up to leave the room and I said that he was not to use the Excel manual as a cross reference. He took the manual and whipped it across the table and gave me a terrible glare. I was very scared.

[...]

I must be a magnet for abusive men in the workplace. First Brian, now Frank! Unbelievable.[29]

In response, Human Resources Director Schlegel wrote to Administrator Ross: "I will take care of this from here."[30] Human Resources Director Schlegel referred this incident to Manager Treaster to investigate.[31]

Later the same day, Manager Treaster, Human Resources Director Schlegel, and Director of Diversity Ojo convened a second panel disciplinary hearing about the incident with Administrator Ross.[32] Mr. Brzozowski claims he only "slid the book to the end of the table."[33] Mr. Brzozowski admitted "he was pacing around her" and "may have glared at her."[34] The panel also asked Mr. Brzozowski about his use of his work computer for personal reasons.[35] Mr. Brzozowski admitted he occasionally used his computer for personal reasons, including checking his personal bank account.[36] After the meeting, the Commission suspended Mr. Brzozowski.[37] Mr. Brzozowski removed his personal belongings from the building, including several bags of clothes, food, and two lockers of items.[38]

### *The Commission fires Mr. Brzozowski for violating Commission policies.*

Two weeks later, Human Resources Director Schlegel told Mr. Brzozowski the Commission fired him because:

•    "The investigation of your workplace behavior documented several serious breaches of Pennsylvania Turnpike Commission (PTC) policies including but not limited to your use of PTC property for lodging purposes, your excessive use of the PTC computer system for

personal use and your intimidating behavior at a Microsoft exercise. Each of these actions is in and of itself grounds for discipline, including termination. Therefore, your employment with the Commission is terminated effective the close of business on Thursday, December 12, 2013."[39]

- "[Y]ou admitted to spending the night in your work area on December 10, 2013."[40]

- "You also admitted that you stayed late or overnight to use the computer system to look up information for a civil case that you are involved in and to prepare for the Word and Excel exercises."[41]

- "You violated the Workplace Violence Policy No. 3.7, General Policy by using threatening gestures and facial grimaces that intimidated another employee at the PTC."[42]

- "You violated the Electronic Communications Acceptable Use Policy, Policy Statement, when you used the PTC's information system for personal gain.[43]

- "Your actions also violate Commission Policy Letter No 3.10 (Code of Conduct), Section X (Job Perforamnce of Employees), subsection 10.1 which requires employees perform all assigned duties in a professional manner; 10.2 which requires employees to become familiar with the policies and regulations of the Commission applicable to his or her assignment; 10.3 which requires employees to adhere to the policies of the Commission; and 10.5 which requires employees to respect the Rules and Regulations of the Commission and ensure they are administered fairly."[44]

The Commission's Chief Executive Officer, Mark Compton, approved firing Mr. Brzozowski on December 20, 2013.[45] The Commission did not replace Mr. Brzozowski.[46] Mr. Brzozowski believes the Commission fired him because he "stood in the way" of an employee "sponsored" by a political friend of the Commission.[47] But the Commission did not hire someone to replace him.

### *The Commission does not hire Mr. Brzozowski as Executive Assistant of the IT Department.*

The Commission fired Mr. Brzozowski after he applied for the Executive Assistant position in the IT Department, along with 107 applicants—ten internal applicants and ninety-eight external applicants.[48] The Commission's Human Resources department reviews each application to determine if the applicant is "qualified" or "not qualified."[49] The Commission's Human Resources department considered eighty-nine candidates "qualified" and nineteen candidates "not qualified"

5

and referred the qualified applications to the IT Department for interviews.[50] In February 2014, the IT Department interviewed twelve of the eighty-nine "qualified" candidates.[51]

The Commission did not interview Mr. Brzozowski "because he had been terminated before [the] scheduled interviews."[52] Mr. Brzozowski believes he did not receive an interview because the majority of Executive Assistants are female.[53] The interview panelists recommended three candidates: Jeremy Krebs, Debra Shively, and Kristine Shuller.[54] The panel submitted a review of Ms. Shuller to the Commission recommending her hire:

### Kristine Shuller

Kristine currently works for the Commonwealth's Office of Administration, IT Department. Kristine's current duties and responsibilities include support of the Bureau of IT Procurement as the subject matter expert with IT Procurement processes and procedures. Kristine also provided administrative support to the Deputy Secretary for Information Technology as well as the Assistant CIO for the Commonwealth Kristine responded very well to interview questions. She noted she works well independently but also enjoys working as a team. Kristine also holds a Bachelor's [sic] of Communications Degree. Krstine's administrative background as well as her proficiency with the Microsoft Office Suite and her Information Technology background makes her an excellent candidate for this position. Ms. Shuller's salary requirements are at the entry level of the N-8 salary range.[55]

The Commission hired Ms. Shuller on February 18, 2014.[56] No party identified Ms. Shuller's age.

## II. Analysis.[57]

Mr. Brzozowski sues the his former employer Commission alleging it discriminated against him on the basis of: (1) his age when it fired him as Executive Assistant of the Office of Diversity and Inclusion, (2) his age when it failed to hire him as Executive Assistant in the IT Department; (3) his gender when it fired him as Executive Assistant of the Office of Diversity and Inclusion; and, (4) his gender when it failed to hire him as Executive Assistant in the IT Department.

The Commission moves for summary judgment arguing Mr. Brzozowski cannot establish a *prima facie* case for any claim and, even if he could make a *prima facie* case, Mr. Brzozowski fails to meet his burden of proving the Commission's legitimate non-discriminatory reasons for its actions were pretext for discriminatory discharge. We find Mr. Brzozowski fails to meet his burden of establishing a *prima facie* case for each age and gender discrimination claim. Even if Mr. Brzozowski establishes a *prima facie* case, the undisputed material facts confirm no factfinder could reasonably find the Commission's legitimate non-discriminatory reason for his termination is pretext for age or gender discrimination. This failure warrants the entry of summary judgment for the Commission.

## A.  We grant summary judgment for the Commission on Ms. Brzozowski's age discrimination claims.

Mr. Brzozowski asserts two claims of age discrimination. Mr. Brzozowski claims the Commission discriminated based on his age when terminating him as the Executive Assistant with Office of Diversity and Inclusion and when it did not hire him as Executive Assistant in the IT Department and instead hired a younger female applicant for the position.

To make a *prima facie* case of age discrimination under the ADEA, Mr. Brzozowski must show he "(1) is 40 years of age or older; (2) was qualified for the position in question; (3) was subject to an adverse employment action despite being qualified; and (4) was subject to the adverse action under circumstances that raise an inference of discrimination."[58] We may draw the inference from a showing the employer did not similarly treat similarly situated employees outside of the protected class.[59] Under the well-settled *McDonnell Douglas* standard, if Mr. Brzozowski establishes a *prima facie* case of age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[60] If the Commission meets this burden, the burden shifts back to Mr. Brzozowski to show, by a preponderance of the

7

evidence, the Commission's proffered reason for the decision is a pretext.[61]  Mr. Brzozowski must prove age was the "but-for" cause of the employer's adverse decision.[62]

To establish pretext, Mr. Brzozowski "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[63]   If Mr. Brzozowski's evidence relates to the credibility of The Commission's proffered justification, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[64]  If Mr. Brzozowski comes forward with sufficient evidence to allow a factfinder to discredit The Commission's proffered justification, he "need not present additional evidence of discrimination beyond [his] *prima facie* case to survive summary judgment" because "the factfinder may infer from the combination of the *prima facie* case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason."[65]

The Commission seeks summary judgment seeking to dismiss both age discrimination claims.  Applying the summary judgment standard and viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to him, Mr. Brzozowski fails to meet his *prima facie* burden for the termination and failure to hire claims.  Even if we assume Mr. Brzozowski meets his burden, we find the Commission had legitimate, nondiscriminatory reasons for terminating Mr. Brzozowski from the Executive Assistant of Office of Diversity and Inclusion and for not hiring Mr. Brzozowski as Executive Assistant of the IT Department.  Mr. Brzozowski fails to show these legitimate reasons are mere pretext for discriminatory animus.    The

8

Commission is entitled to judgment as a matter of law on Mr. Brzozowski's age discrimination claims.

### 1. Mr. Brzozowski did not adduce facts of *prima facie* age discrimination leading to his firing.

Mr. Brzozowski must adduce evidence of a *prima facie* case to withstand summary judgment. The Commission agrees Mr. Brzozowski meets the first three elements of a *prima facie* case but argues Mr. Brzozowski cannot establish it replaced him with "a sufficiently younger person to permit an inference of age discrimination."[66] The Commission argues it did not replace Mr. Brzozowski with a sufficiently younger person—in fact, the Commission argues it did not hire anyone to replace Mr. Brzozowski.

The record is devoid of evidence of anyone replacing Mr. Brzozowski, much less anyone sufficiently younger to support an inference of discrimination. Director of Diversity Ojo swore the Commission's Office of Diversity and Inclusion now only has two employees and currently does not employ an Executive Assistant.[67] Mr. Brzozowski does not adduce evidence of a sufficiently younger replacement—or any replacement at all—in his response to summary judgment. Mr. Brzozowski does not address this claim at all.

No factfinder could reasonably find the Commission replaced Mr. Brzozowski with an employee sufficiently younger to support an inference of discriminatory animus.[68] It did not hire anyone to replace him.

"If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the *prima facie* case, [he] has not met [his] initial burden, and summary judgment is properly granted for the defendant."[69] Mr. Brzozowski fails to satisfy the fourth element of the *prima facie* case. He has not met the initial burden. We grant summary judgment to the Commission on his age discrimination claim for his firing.

### 2. Mr. Brzozowski did not adduce facts of *prima facie* age discrimination in hiring for the IT Executive Assistant.

The Commission argues Mr. Brzozowski did not adduce facts meeting his *prima facie* case for age discrimination for failure to hire. In the failure to hire context, Mr. Brzozowski must adduce facts allowing us to infer discrimination by showing the Commission treated a similarly situated comparator outside of the protected class differently.[70] The Commission argues Mr. Brzozowski cannot meet this burden because the successful candidate for the IT Department's Executive Assistant (Ms. Shuller) is not a comparator to Mr. Brzozowski. Mr. Brzozowski argues Ms. Shuller is not only a comparator, but less qualified, which "illuminates the age discrimination that took place here."[71]

Our Court of Appeals requires comparator employees to be similarly situated in all relevant respects.[72] "The Court of Appeals for the Third Circuit does not require a plaintiff to show that the comparators are identical in all relevant respects, but only that they are alike in all relevant respects."[73] "Determining whether an individual 'similarly situated' to another individual is a case-by-case, fact sensitive inquiry," when "the focus is on the particular criteria or qualifications identified by the employer as the reason for" the employment decision.[74]

In *Royster*, an African-American female over forty years of age alleged a Pennsylvania school district failed to hire her as superintendent due to her race, gender, and age. The school district considered three candidates for superintendent: three Caucasian males in their forties and internal employees with advanced degrees paid for by the district. Plaintiff did not work for the district nor did she receive an advanced degree paid for by the district. The court found "the three Caucasian, male candidates ... are not similarly situated to [plaintiff] because each was a then-current employee of the School District who received financial assistance from the School District

10

in obtaining his advanced degree or certification papers."[75] The court found the plaintiff failed to establish a *prima facie* case.

We look to whether Ms. Shuller and Mr. Brzozowski are alike in all relevant respects. The Commission argues they are not because Mr. Brzozowski had been fired for cause by the time it interviewed candidates for the IT Department Executive Assistant. We agree. As with the plaintiff-employee in *Royster*, a former employee previously fired for cause is not relevant in all respects to a prospective employee not fired for cause. The Commission fired Mr. Brzozowski in December 2013. The Commission did not interview for this position until February 2014. Mr. Brzozowski, while qualified for the position, ceased to be similarly situated to Ms. Shuller after being fired for cause.

Mr. Brzozowski responds: "To accept defendants [sic] fatally flawed theory would mean that all an employer would have to do to eliminate all comparators would be to first fire the employee and then hire an outside candidate."[76] We do not follow this rationale. We do not see why an employer would terminate an employee just to—maybe somewhere down the road—use this fact to defend a potential lawsuit in a potential employment discrimination case. An employer may use its discretion in hiring decisions if it is not discriminatory. There is no dispute as to a material fact. Mr. Brzozowski, an employee terminated for cause, is not a similarly situated employee to Ms. Schuller. Mr. Brzozowski fails to meet his *prima facie* case of age discrimination on failure to hire for the Executive Assistant in IT position.

### 3. Mr. Brzozowski fails to adduce facts of pretext for his age discrimination claims.

Even if we find Mr. Brzozowski satisfied his *prima facie* burden, he still failedto adduce facts defeating summary judgment on his age discrimination claim. The Commission articulates

legitimate, non-discriminatory reasons for firing Mr. Brzozowski: he slept overnight at work, an employee felt threatened by him, and he violated the Commission's computer use policy.

Because the Commission offers legitimate, non-discriminatory reasons, Mr. Brzozowski must then prove by a preponderance of the evidence that these reasons are not the true reasons but are instead pretext for discrimination. "[T]o defeat summary judgment when the [employer] [articulates] legitimate nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[77]

Mr. Brzozowski argues the Commission's four proffered reasons are pretextual:

1. Reason #1: The Commission fired Mr. Brzozowski for workplace violence. Mr. Brzozowski argues Workplace Violence Policy 3.7, Example 4, requires the actor "intend" to "threaten a person." Mr. Brzozowski argues the undisputed facts demonstrate he did not intend to threaten Administrator Ross.

2. Reason #2: Sleeping over at work. Mr. Brzozowski argues there is no policy against staying overnight at work. Mr. Brzozowski argues he had stayed over before December 10, 2013 without reprieve.

3. Reason #3: Sleeping during his work. Mr. Brzozowski argues all evidence of him sleeping during work hours is "inadmissible hearsay in court and therefore can be given no credence."

4. Reason #4: Computer usage. Mr. Brzozowski argues the Commission's computer policy does not prohibit the personal use of computers nor does prohibit use after work hours.

Mr. Brzozowski argues a reasonable factfinder could disbelieve each of the Commission's articulated reason. In *Keller v. Orix Credit Alliance, Inc.*,[78] our Court of Appeals explained:

> To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies,

> incoherencies, or contradictions in the employer's proffered
> legitimate reasons for its actions that a reasonable factfinder could
> rationally find them unworthy of credence.[79]

Guided by our Court of Appeals, we review each of Mr. Brzozowski's arguments to determine if the Commission's proffered reason is "wrong or mistaken" or "inconsistent and contradictory."[80] Mr. Brzozowski argues the Commission did not appropriately consider whether Mr. Brzozowski intended to threaten Administrator Ross. This argument, if assumed true, would only show a wrong or mistaken decision—the Commission did not properly apply the rule—and would not show contradictions. The undisputed record is Administrator Ross felt threatened by Mr. Brzozowski during the December 11, 2013 Microsoft training session. The Commission tasked Manager Treaster with investigating the incident, and she held a pre-disciplinary hearing. There is no evidence the Commission handled other workplace violence incidents differently. We see no inconsistency or contradiction.

Mr. Brzozowski then argues the Commission acted pretextually because it pointed to his staying overnight at work when the Commission terminated him and there is no policy prohibiting staying overnight. Mr. Brzozowski suggests the Commission cannot terminate an employee for actions unless the Commission prohibits the action in its employee handbook. This again goes to wrongness of the decision, not to contradiction or inconsistency in the decision. Mr. Brzozowski does not adduce any evidence the Commission treating other employees staying overnight at work differently to support finding an inconsistency or contradiction. Mr. Brzozowski cannot meet his burden.

Mr. Brzozowski does not question the third proffered reason—sleeping at work—so much as he states the reason is tenuous based on inadmissible hearsay. Even assuming this is true, Mr. Brzozowski at best establishes the Commission made the wrong decision and does not show its

decision is inconsistent.    This argument also fails.    Finally, Mr. Brzozowski argues the Commission's computer use policy does not preclude personal use. He reasons because the policy does not preclude personal use, the Commission's decision to fire him for personal use must be pretext. Again, this argument goes to whether the Commission properly applied its policies and does not, by itself, demonstrate inconsistencies in the employer's reason. No reasonable factfinder could rationally find the Commission's proffered reasons unworthy of credence.

Mr. Brzozowski could also meet his burden of showing pretext by adducing facts allowing us to infer a "discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[81] Mr. Brzozowski cannot establish age discrimination motivated the Commission's decisions here.    For his firing claim, the undisputed record confirms the Commission held two separate disciplinary meetings with Mr. Brzozowski because of his overnight stays at work, his behavior towards a co-worker, and personal use of his work computer. Mr. Brzozowski does not cite any evidence the Commission fired him because of his age let alone enough evidence the Commission used age as a "motivating" or "determinative" factor. For the failure to hire claim, Mr. Brzozowski fails to show his age motivated the Commission to choose a different candidate for the IT Department's Executive Assistant job. Mr. Brzozowski does not adduce the age of the successful candidate or the other recommended candidates for the position. No reasonable factfinder would consider the Commission discriminated against Mr. Brzozowski because of his age. Even if we assume Mr. Brzozowski meets his *prima facie* burden, he cannot show the Commission's legitimate, non-discriminatory reasons are pretext for discrimination. We enter summary judgment as to both age discrimination claims.

14

**B.  We grant summary judgment for the Commission on Ms. Brzozowski's gender discrimination claims.**

Mr. Brzozowski asserts two claims of gender discrimination. Mr. Brzozowski claims the Commission discriminated against him based on his gender when terminating him as the Executive Assistant with Office of Diversity and Inclusion. Mr. Brzozowski also claims the Commission discriminated against him based on his gender when the Commission hired a younger female as Executive Assistant in the IT Department instead of him.

Congress mandates "it shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, religion, sex, or national origin[.]"[82] In cases alleging "reverse discrimination," where a man (as a non-protected class member) is the target of the alleged discrimination, our Court of Appeals removes the first prong of the *prima facie* analysis.[83] To establish a *prima facie* "reverse discrimination" case, a "plaintiff must show (1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII."[84] If a plaintiff establishes a *prima facie* case, then "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action."[85] If the defendant carries its burden, the plaintiff may still prevail by showing that "the defendant's proffered reason is merely pretext for intentional discrimination."[86]

The Commission moves for summary judgment on the gender discrimination claims. Applying the summary judgment standard and viewing the underlying facts and all reasonable inferences in the light most favorable to Mr. Brzozowski, there are no questions of material fact on Mr. Brzozowski's *prima facie* proofs for the gender discrimination claims. Mr. Brzozowski

fails to meet his *prima facie* burden for the termination and failure to hire gender discrimination.

Even if we assume Mr. Brzowowski meets his *prima facie* burden, the adduced evidence confirms

the Commission had legitimate, nondiscriminatory reasons for terminating Mr. Brzozowski from

the Executive Assistant of Office of Diversity and Inclusion and for not hiring Mr. Brzozowski as

Executive Assistant of the IT Department. Mr. Brzozowski fails to show these legitimate reasons

are pretext for discriminatory animus. The Commission is entitled to judgment as a matter of law

on Mr. Brzozowski's gender discrimination claims.

### 1. Mr. Brzozowski fails to adduce facts meeting a *prima facie* case of gender discrimination relating to his firing.

The Commission moves for summary judgment on Mr. Brzozowski's gender

discrimination claim based on his firing. Mr. Brzozowski argues he presents direct evidence of

this claim requiring we review this claim under *Price Waterhouse v. Hopkins*,[87] rather than the

*McDonnel Douglas Corp. v. Green*[88] framework.

Mr. Brzozowski does not present direct evidence of gender discrimination. Direct evidence

"must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance

on an illegitimate criterion in reaching their decision.'"[89] The fired employee may rely on

circumstantial evidence if it can "fairly be said to directly reflect the alleged unlawful bias."[90] Mr.

Brzozowski cannot meet this burden. Mr. Brzozowski cites Administrator Ross's December 12,

2013 e-mail to Human Resources Director Schlegel: "I must be a magnet for abusive men in the

workplace. First Brian, now Frank. Unbelievable" and Human Resources Director Schlegel's

response "I'll take care of this from here" to argue a direct animus towards men. [91] But Human

Resources Director Schlegel's response is a neutral statement. Even if we read this comment in

the light most favorable to Mr. Brzozowski, it still is insufficient to show direct evidence of gender

discrimination. Human Resources Director Schlegel did not investigate Mr. Brzozowski's claims;

16

Manager Treaster handled disciplinary matters. Manager Treaster twice interviewed claims, spoke with Administrator Ross, and reviewed the Commission's policies implicated by Mr. Brzozowski's alleged conduct. Mr. Brzozowski fails to adduce direct evidence of the Commission's discriminatory animus towards men.

Mr. Brzozowski also claims he adduced circumstantial evidence to state a *prima facie* case of gender discrimination under the *McDonnel Douglas* framework. The Commission argues Mr. Brzozowski cannot adduce facts allowing an inference the Commission fired him because he is a male. We agree. The Commission fired Mr. Brzozowski because he slept overnight at work, an employee felt threatened by him, and he violated the Commission's computer use policy. None of these reasons relate to Mr. Brzozowski's gender. Mr. Brzozowski adduce facts of a *prima facie* case.

## 2. Mr. Brzozowski cannot adduce facts of a *prima facie* case of gender discrimination for failure to hire.

The Commission argues Mr. Brzozowski fails to establish a *prima facie* case of gender discrimination based on failure to hire. The Commission assumes Mr. Brzozowski meets the first two elements of a *prima facie* case but fails to adduce facts allowing an inference of discrimination. The Commission argues Mr. Brzozowski presents no evidence of a discriminatory inference. We agree.

Mr. Brzozowski worked as an Executive Assistant in the Commission's Office of Diversity and Inclusion for over one year. The Commission hired Mr. Brzozowski for this job over two qualified female candidates. While the Commission did not interview Mr. Brzozowski for the IT Department position, the Commission received over 100 applications for the job and only interviewed twelve applicants. The Commission fired Mr. Brzozowski for cause by the time of

17

interviews. After interviews, the panel interviewers recommended one male and two female applicants for the job.

Mr. Brzozowski argues the overwhelming number of women working as Executive Assistance infers discrimination. But a majority of employees working in the position is insufficient by itself to allow a jury to infer discrimination. The Commission hired male Executive Assistants, including Mr. Brzozowski. The Commission's IT Department recommended a male applicant for this job but decided to hire Ms. Shuller.

Mr. Brzozowski argues Ms. Shuller's qualifications—compared to his—also demonstrates discrimination. Mr. Brzozowski cites his ten-year career with the Commission and his earlier experience in the IT Department. But Mr. Brzozowski spent most of his tenure as a toll collector, which is not an Executive Assistant or IT job, and only spent about thirty days with the IT Department in 2003. Mr. Brzozowski argues Ms. Shuller "was an outside hire with no prior [Commission] or IT experience."[92] The record is to the contrary. Ms. Shuller worked in IT. While Ms. Shuller held no Commission experience, she worked for other Commonwealth agencies. A qualified applicant cannot give rise to an inference of discrimination just because she is female. Mr. Brzozowski fails to adduce facts of a *prima facie* case.

### 3. Mr. Brzozowski fails to adduce facts demonstrating the legitimate reasons are pretext for gender discrimination.

Even assuming Mr. Brzozowski meets his *prima facie* burden, and the burden shifts to the Commission, Mr. Brzozowski still cannot withstand summary judgment on his gender discrimination claims. The Commission articulates legitimate, non-discriminatory reasons for firing Mr. Brzozowski: he slept overnight at work, an employee felt threatened by him, and he violated the Commission's computer use policy.

Because the Commission offers legitimate, non-discriminatory reasons, Mr. Brzozowski has the burden of proving by a preponderance of the evidence these reasons are not the true reasons but are instead pretext for discrimination. "[T]o defeat summary judgment when the [employer] [articulates] legitimate nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[93]

We earlier reviewed Mr. Brzozowski's evidence which he argues suggests a factfinder could disbelieve the Commission's articulated legitimate reasons. We found Mr. Brzozowski does not meet this burden for those same reasons he failed to adduce evidence of pretext on the age claim.

We now review whether Mr. Brzozowski can show an "invidious discriminatory reason was more likely than not a motivating or determinative cause."[94] We look to whether Mr. Brzozowski shows the Commission's invidious gender discrimination. For his termination claim, Mr. Brzozowski does not adduce evidence of gender discrimination. The Commission hired Mr. Brzozowski into this role over a year before firing him; it chose him over two female candidates. The Commission points to Mr. Brzozowski's behavior around December 11, 2013 as offenses worthy of termination. The Commission's charges are not gender specific. Mr. Brzozowski does not believe the Commission fired him because of his gender; he feels the Commission fired him because he "stood in the way" of an employee "sponsored" by a political friend of the Commission.[95] This too is tenuous as the adduced evidence shows the Commission did not hire a new Executive Assistant of Diversity and Inclusion.

19

Mr. Brozozwski fails to show the Commission's invidious discrimination on the failure to hire claim. The Commission did not consider Mr. Brzozowski for this position because it fired him for cause. Mr. Brzozowski fails to adduce evidence the Commission declined to interview him because of his gender. The Commission recommended another male employee for the job but ultimately hired a qualified female applicant. Mr. Brzozowski cannot meet his burden by arguing the Commission hired a female.

Mr. Brzozowski does not adduce evidence of invidious discrimination allowing a reasonable factfinder to possibly rule in his favor. Even if we assume Mr. Brzozowski adduces evidence of a *prima facie* case for both gender discrimination claims, he cannot defeat summary judgment after he fails to show the Commission's legitimate reasons for firing him in December and not hiring him in February are pretextual.

## III. Conclusion.

Mr. Brzozowski cannot, as a matter of law, adduce evidence of *prima facie* claims for age or gender discrimination. He also cannot establish the Commission's reasons for discharge or failure to hire are pretext for age or gender discrimination. Mr. Brzozowski does not show the Commission replaced him with a younger, female employee to support an inference of discriminatory animus for his termination. Mr. Brzozowski does not show the Commission discriminated based on age or gender when choosing a different applicant for the Executive Assistant of IT position. The undisputed factual record developed after discovery confirms the Commission terminated Mr. Brzozowski for several legitimate reasons and did not hire Mr. Brzozowski in the IT job after firing him months earlier for cause. We grant the Commission's motion for summary judgment in the accompanying Order.

---

[1] ECF Doc. No. 103-2 (App. PTC) at 6.

[2] Our Policies require a Statement of Undisputed Material Facts in support of a Rule 56 motion, as well as an appendix of exhibits. The Commission submitted an appendix of exhibits and affidavits with "PTC" marked Bates numbers. *See generally id.* Mr. Brzozowski did not submit additional exhibits or affidavits and cites to the PTC Appendix in his response. We reference the exhibits and affidavits submitted in the Commission's appendix. We refer to this appendix as "App." and cite to the "PTC" Bates numbers. In Mr. Brzozowski's Statement of Material Facts in response to Defendants Separate Statement of Undisputed Material Facts, Mr.Brzozowski does not specifically deny or admit many of the Commission's Undisputed Material Facts. We look to the underlying record for whether facts are in dispute. We are cognizant of our Federal Rule of Civil Procedure 56(c): "(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

[3] ECF Doc. No. 103-2 (App. PTC) at 6.

[4] *Id.*

[5] *Id.*

[6] ECF Doc. No. 103-3 (Commission SUMF) ¶ 8; ECF Doc. No. 104-1 (Brzozowski SUMF) ¶ 8.

[7] ECF Doc. No. 103-2 (App. PTC) at 76.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 77.

[11] *Id.*

[12] *Id.* at 42.

[13] *Id.* at 220.

[14] *Id.* at 182.

[15] *Id.* Administrator Ross had no prior problems with Mr. Brzozowski. *Id.*

[16] *Id.* at 81-92.

[17] *Id.* at 78.

[18] *Id.*

[19] *Id.* at 194. Before December 11, 2013, Mr. Brzozowski had other sleeping incidents. In July 2013, Commission employee David Smith reported Mr. Brzozowski asleep at his desk during work hours. *Id.* at 55-56. Patrick Caro, manager of labor relations, also reported he thought he saw Mr. Brzozowski sleeping at his desk. *Id.* at 57.

[20] *Id.* at 20.

[21] *Id.* at 185.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* Human Resources Director Schlegel described the firing process during her deposition: "[Judy Treaster] would meet with the person, the manager, and then set up a meeting with the employee. She would gather the facts, and then she would make a recommendation; discuss it with me. And if she felt the recommendation was to terminate or any lesser discipline, if there was any discipline at all, then we would then review it with legal, prepare the letter, the suspension, termination, and then review it with legal." *Id.* at 128.

[26] *Id.* at 81-92.

[27] *Id.*

[28] *Id.* at 220-22.

[29] *Id.* at 185.

[30] *Id.* at 220-22.

[31] *Id.*

[32] *Id.* at 93-100.

[33] *Id.*

[34] *Id.* at 99-100.

[35] *Id.* at 98.

[36] *Id.* at 81-92.

[37] *Id.* at 97.

[38] *Id.* at 221.

[39] *Id.* at 59-60.

[40] *Id.* at 59.

[41] *Id.*

[42] *Id.* at 60.

[43] *Id.* at 59-60.

[44] *Id.* at 60.

[45] *Id.* at 80.

[46] *Id.* at 189. Director of Diversity Ojo swore:

> **Q**: How many people do you supervise?
> **A**: Right now?
> **Q**: Yes.
> **A**: I supervise no people right now
> **Q**: No people? So you have no staff right now?
> **A**: No staff right now. I'm in the process of hiring one person.
> **Q**: Okay. How big is your staff normally?
> **A**: When Frank was there, we had two compliance officers, an executive assistant, and EEO officer and Claire, the business diversity, so from five to zero so.

*Id.*

[47] *Id.* at 29-30.

[48] *Id.* at 222.

[49] *Id.* at 126.

[50] *Id.* at 125-126 ("As part of the hiring process, an initial determination is made by the Human Resources Department as to whether a candidate has the basic qualifications for a position before his or her application is referred to the Department holding the position for an interview.").

[51] *Id.* at 222.

[52] *Id.*

[53] *Id.* at 33.

[54] *Id.* at 224.

[55] *Id.* at 229.

[56] *Id.*

[57] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[58] *Fiorentini v. William Penn School District*, 665 F.App'x. 229, 233–234 (3d Cir. 2016).

[59] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797–98 (3d Cir. 2003).

[60] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[61] *Willis*, 808 F.3d at 644 (citing *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426-27 (3d Cir. 2013).

[62] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

[63] *Burton v. Teleflex*, 707 F.3d 417, 426-27 (3d Cir. 2013) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[64] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).

[65] *Burton*, 707 F.3d at 427 (citations omitted).

[66] *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir.1995).

[67] ECF. Doc. No. 103-2 (App. PTC) at PTC 189.

[68] *See, e.g.*, *Pavlik v. International Excess Agency, Inc.*, 417 F.App'x 163, 167 (3d Cir. 2011).

[69] *Burton*, 707 F.3d at 426.

[70] *Royster v. Laurel Highlands School Dist.*, 994 F.Supp.2d 701, 710 (W.D. Pa. 2014).

[71] ECF Doc. No. 104, at p. 10.

[72] *Wilcher v. Postmaster General*, 441 Fed.Appx. 879, 882 (3d Cir. 2011).

[73] *Royster,* 994 F.Supp.2d at 709-10 (citing *Mun Revenue Services, Inc. v. McBlain*, 347 Fed.Appx. 817, 825 (3d Cir. 2009); *Borrell v. Bloomsburg Univ.*, 955 F.Supp.2d 390, 404-05 (M.D. Pa. 2013)).

[74] *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998).

[75] *Royster*, 994 F.Supp.2d at 711.

[76] ECF Doc. No. 104, at p. 10.

[77] *Burton*, 707 F.3d 417, 426-27 (3d Cir. 2013) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[78] 130 F.3d 1101 (3d Cir. 1997).

[79] *Id.* at 1008.

[80] *Id.*

[81] *Burton*, 707 F.3d at 426-27.

[82] 42 U.S.C. § 2000e-2.

[83] *See Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir.1999) ("'[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] ... sex ...' ''").

[84] *Warenecki v. City of Philadelphia*, No. 10–1450, 2010 WL 4344558, at *5 (E.D.Pa. Nov. 3, 2010).

[85] *Id.*

[86] *Id.*

[87] 490 U.S. 228 (1989).

[88] 411 U.S. 792 (1973).

[89] *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513 (3d Cir. 1997) (quoting *Price Waterhouse*, 411 U.S. at 277 (O'Connor, J. concurring)).

[90] *Id.* (citing *Hook v. Ernst & Young*, 28 F.3d 366 (3d Cir. 1994) (other citations omitted).

[91] ECF Doc. No. 103-2 (App. PTC) at PTC 185.

[92] Doc 104 at p. 9.

[93] *Burton*, 707 F.3d at 426-27 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[94] *Id.*

[95] ECF Doc. No. 103-2 (App. PTC) at 29-30.